**Ronald WIEDERHOLT, Respondent,**

v.

**CITY OF MINNEAPOLIS,
petitioner Appellant,**

**Donald Hawkinson, Defendant.**

**No. CX–96–2398.**

Supreme Court of Minnesota.

July 9, 1998.

Jay Heffern, Minneapolis City Attorney, Deborah A. Styles, Assistant City Attorney, Minneapolis, for Appellant.

David A. Singer, Minneapolis, for Respondent.

## OPINION

GILBERT, Justice.

We consider whether appellant City of Minneapolis is entitled to vicarious official immunity based on a sidewalk inspector's decision not to order the immediate repair of a broken sidewalk slab or to place warning signs around it. Respondent Ronald Wiederholt tripped over the broken slab while in-line skating and sued the city, alleging negligence for its failure to repair the sidewalk immediately or to place warning devices at the scene. The city moved for summary judgment, arguing that it is entitled to vicarious official immunity because the sidewalk inspector, who was not named in the suit, is entitled to official immunity. The district court granted the city's summary judgment motion. The court of appeals reversed, holding that because the sidewalk inspector was not named in Wiederholt's suit, the inspector did not need the protection of official immunity and thus, the city was not entitled to vicarious official immunity. We hold that the sidewalk inspector's decision was ministerial in nature and thus not entitled to official immunity. Consequently, the city is not entitled to vicarious official immunity. We therefore affirm the court of appeals on different grounds.

On July 18, 1993, Wiederholt was in-line skating in south Minneapolis when he tripped over a broken sidewalk slab and broke his collarbone. His skate hit a portion of sidewalk slab that projected about 1 1/2 to 2 inches above the adjacent slab, causing him to fall.

The Minneapolis Code creates a duty "to construct, reconstruct and maintain in good repair" the city's sidewalks. Minneapolis, MN, Code of Ordinances ch. 8, § 12 (1991). Under the code, "it shall be the duty of the City Engineer to *immediately repair* [any broken sidewalk] in a good, substantial and thorough manner." *Id.* § 13 (emphasis added). The sidewalk division of the Department of Public Works handles all sidewalk inspection and repair. Three inspectors have responsibility for inspecting approximately 2,000 miles of sidewalks and spend approximately $800,000 per year repairing this type of defect. In addition, three contractors work full time all summer to repair defective sidewalks. The sidewalk division's written policy states that all sidewalks projecting more than one inch above the adjacent slab constitute a hazard and must be repaired.

On June 16, 1993, approximately one month before Wiederholt's accident, a city sidewalk inspector had marked this particular sidewalk slab for repair while conducting a routine sidewalk inspection. Because this slab projected 1 1/2 to 2 inches above the adjacent slab, the inspector determined that it needed to be repaired. Although the inspector had the authority to flag the sidewalk for immediate repairs, he did not do so; city inspectors typically order immediate repairs only once or twice per year. The inspector also did not place a warning device at the location. Instead, he marked the sidewalk with purple paint so that the city contractor knew which portion of the sidewalk to repair. The city's Assistant Director of Public Works/Director of Operations testified that the sidewalk Wiederholt tripped on "clearly [met] our criteria for replacement." He explained that the city had determined that once a sidewalk slab projected more than one inch, "it's starting to become something that could increase the city's liability or cause problems, and at that point we schedule it for replacement."

Twenty-six days after discovering the broken sidewalk, on July 12, 1993, the sidewalk inspector issued a repair notice to the adjacent property owner pursuant to department policy. A notice provision is also contained in the city code and gives the owner the option to make the repairs within 2 weeks or the city would make the repair and assess the owner the cost. *See* Minneapolis Code, ch. 8, § 12. After the notice was issued but before the repair period ended, Wiederholt fell and received the injuries that are the subject of this suit. The property owner declined to make the sidewalk repairs himself, and the repairs were eventually completed in October 1993, approximately 4 months after discovery of this hazardous condition.

## I.

■ In reviewing a district court's grant of summary judgment, we must determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Watson ex rel. Hanson v. Metropolitan Transit Comm'n*, 553 N.W.2d 406, 411 (Minn.1996). The applicability of immunity is a question of law, which we review de novo. *Johnson v. State*, 553 N.W.2d 40, 45 (Minn.1996.)

We granted review to determine whether the city is entitled to vicarious official immunity even though the inspector was not named in the suit. An assessment of the applicability of vicarious official immunity, however, first requires that we evaluate whether official immunity applies, and both parties briefed and argued this threshold issue. *See S.W. & J.W. ex rel. A.M.W. v. Spring Lake Park Sch. Dist. No. 16*, 580 N.W.2d 19 (Minn.1998.) Accordingly, we examine first whether the sidewalk inspector is entitled to official immunity for his actions regarding the repair of the broken sidewalk slab.

■ The common law doctrine of official immunity provides that a public official who is charged by law with duties calling for the exercise of judgment or discretion is not personally liable to an individual for damages unless the official is guilty of a willful or malicious act. *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn.1988). Official immunity thus protects government officials from suit for discretionary actions taken in the course of their official duties. *Janklow v. Minnesota Bd. of Examiners for Nursing Home Adm'rs*, 552 N.W.2d 711, 716 (Minn. 1996). The doctrine is designed to protect officials from "the fear of personal liability that might deter independent action." *Elwood*, 423 N.W.2d at 678.

■ The critical distinction to be made in an official immunity determination is whether the nature of the individual official's actions are discretionary or ministerial, because only discretionary decisions are immune from suit. *Id.* at 677–678. A discretionary decision is one involving more individual professional judgment that necessarily reflects the professional goal and factors of a situation. *Janklow*, 552 N.W.2d at 716. In contrast, a ministerial duty is one in which nothing is left to discretion; it is "absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W.

165, 167 (1937) (citation omitted). When the job is "simple and definite" and therefore "clearly ministerial," the public employee is not entitled to official immunity. *See Williamson v. Cain,* 310 Minn. 59, 61, 245 N.W.2d 242, 244 (1976). Furthermore, public officials clearly have a duty to adhere to ordinances and statutes. *See Waste Recovery Co-op. of Minnesota v. County of Hennepin,* 517 N.W.2d 329, 332 (Minn. 1994).

In this case, the city ordinance establishes the sidewalk inspector's duty by requiring "immediate repair" of broken sidewalk slabs. The city sidewalk division's written policy identifies any sidewalk slab projecting more than one inch above the adjacent slab as a hazard mandating immediate repair. It is undisputed that the broken sidewalk slab in question was a hazard because it projected about 1. 1/2 to 2 inches above the adjacent slab. Accordingly, pursuant to the ordinance, this sidewalk section required immediate repair. "Immediate" means "[m]ade or performed without delay." *Black's Law Dictionary* 296 (Brian Garner ed.1996). While it is true that there was a substantial delay in making the repairs, it is not solely the delay that determines the immunity question. Rather, it is the nature of the inspector's duty after discovery of the hazard that controls whether official immunity applies. Once the sidewalk inspector identified the broken slab, his duty to have the sidewalk immediately repaired was clearly ministerial in nature because it was "simple and definite," dictated by the city's own written policy. An official cannot convert a ministerial decision into a discretionary one by refusing to comply with the mandate contained in a city ordinance. *See Waste Recovery,* 517 N.W.2d at 333.

The sidewalk inspector had no discretion to decide, based on these fixed and designated facts, not to repair the sidewalk. In fact, his use of discretion was foreclosed by law. His action regarding the sidewalk repair was essentially fixed—"absolute, certain, and imperative, involving merely execution of a specific duty" to repair and thus was ministerial in nature. *Cook,* 200 Minn. at 224, 274 N.W. at 167. In *Williamson v.*

*Cain,* employees of the Iron Range Resources and Rehabilitation Commission damaged a neighbor's property when removing an abandoned house pursuant to a state program. 310 Minn. at 60, 245 N.W.2d at 243. The employees' actions were held to be ministerial and therefore non-discretionary. *Id.* at 61, 245 N.W.2d at 244. Like the removal of the house discussed in *Williamson v. Cain,* the inspector's job here was "simple and definite"—to order the repair of a sidewalk, and the "nature, quality and complexity of [his] decision-making process" does not entitle him to immunity. *Id.* Consequently, we hold that the sidewalk inspector does not have official immunity.

## II.

Because we hold that the sidewalk inspector was not entitled to official immunity, we hold that the city is not entitled to vicarious official immunity under these facts. When applicable, vicarious official immunity protects the government entity from suit based on the official immunity of its employee. In prior cases, "[g]enerally, if the employee is found to have immunity, the claim against the municipal employer has been dismissed without explanation." *Pletan,* 494 N.W.2d at 42. We apply vicarious official immunity when failure to grant it would focus "stifling attention" on the official's performance "to the serious detriment of that performance." *Olson v. Ramsey County,* 509 N.W.2d 368, 372 (Minn.1993). In such circumstances, we have concluded that "[i]t would be anomalous * * * to impose liability on the [government employer] for the very same acts for which [the employee] receives immunity." *Watson,* 553 N.W.2d at 415. We also suggested in dicta, however, that we might under some circumstances find an exception to vicarious official immunity and hold a governmental entity liable even though the official is not personally liable. *Pletan v. Gaines,* 494 N.W.2d 38, 42 (Minn.1992).

While we decline to apply vicarious official immunity in this case, we clarify that a grant of vicarious official immunity to a public employer would be based on the nature of an employee's immune conduct,

whether or not the employee was actually named as a defendant in a lawsuit. To deny a government employer vicarious official immunity simply because the official was not named in the suit would allow plaintiffs to defeat immunity by declining to name the official as a defendant. We implicitly recognized this rationale in *Watson*, where we granted vicarious official immunity to the government employer despite the official not being named in the suit. *See* 553 N.W.2d at 415–16. We thus make explicit today a principle of law that we have already endorsed.

We conclude that a government employer may generally invoke the doctrine of vicarious official immunity even if the individual official whose conduct is at issue is not a named defendant in the suit. However, because we hold here that official immunity does not apply to the ministerial nature of the sidewalk inspector's duty regarding repair of the broken sidewalk slab, we hold that the city is not entitled to vicarious official immunity.

Affirmed on other grounds and remanded for proceedings consistent with this opinion.