**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2293**

Juan Edward Shariss,
Respondent,

vs.

City of Bloomington, et al.,
Appellants.

**Filed August 18, 2014
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CV13952

Juan E. Shariss, Minneapolis, Minnesota (pro se respondent)

Daniel P. Kurtz, League of Minnesota Cities, St. Paul, Minnesota (for appellants)

Considered and decided by Reyes, Presiding Judge; Hooten, Judge; and Kirk, Judge.

## S Y L L A B U S

A snowplow driver's decision to drive his snowplow in reverse, when not actively engaged in snow-removal operations, involves the execution of a ministerial duty that is not protected by common-law official immunity or vicarious official immunity.

**O P I N I O N**

**REYES**, Judge

In this interlocutory appeal from the district court's denial of appellants' motion for summary judgment, appellants argue that common-law official immunity bars respondent's negligence action against appellant snowplow driver because his decision to drive his snowplow in reverse was a discretionary act that was not willful or malicious and that, as a result, appellant city is entitled to vicarious official immunity. We affirm.

**FACTS**

On March 2, 2011, a snowplow owned by appellant City of Bloomington (the City), and driven by appellant Daniel Pawlak, collided with a van driven by respondent Juan Shariss. Before removing snow from an area near the intersection of West 86th Street and Lyndale Avenue South, Pawlak was to wait in a queue of snowplow trucks behind a snowblower. Once the snowblower had filled the cargo area of his snowplow, Pawlak was to dump the snow at a designated dump site and return to the queue for another load. At the time of the accident, Pawlak was waiting in the queue behind another City snowplow and was stopped in the eastbound right lane of West 86th Street, partially blocking entry to the right merge-lane onto Lyndale Avenue South. He noticed a school bus "a hundred feet or so" behind him and believed he was blocking the bus's path. The City's snow-removal policy does not directly address such situations, but based on the "standard operating procedure" of "maintain[ing] traffic flow," and seeing no one else behind him, Pawlak reversed his snowplow and began to back up to give the bus enough room to pass.

2

At the same time, respondent Juan Shariss was leaving a gas station, which has a driveway onto eastbound West 86th Street just before the right merge-lane, between where Pawlak and the school bus were stopped. As Shariss made a right turn out of the driveway, Pawlak began to drive his snowplow in reverse, and the two vehicles collided. Shariss sued the City and Pawlak, alleging negligence and seeking more than $50,000 in damages for injuries sustained as a result of the accident. The City and Pawlak moved for summary judgment, arguing that Pawlak is protected from suit by common-law official immunity and that the City is protected by vicarious official immunity as a result.[1] The district court denied the motion, and this interlocutory appeal follows.[2]

## ISSUE

Did the district court err when it denied summary judgment to appellants on the basis that they were not protected by common law official immunity and vicarious official immunity?

## ANALYSIS

### I. Standard of review

The City and Pawlak argue that the district court erred when it denied summary judgment in their favor by concluding that Shariss's suit was not barred by common-law official and vicarious official immunity. On a motion for summary judgment,

---

[1] The City and Pawlak also argued that they were entitled to summary judgment on the basis of statutory immunity. Minn. Stat. § 466.03, subd. 6 (2012). The district court rejected this argument, and the City and Pawlak do not reassert it on appeal.

[2] Respondent Shariss has not filed a brief on appeal. We ordered this matter to proceed under Minn. R. Civ. App. P. 142.03, which provides that if respondent fails to file a brief, the case shall be determined on the merits.

3

"[j]udgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. "While denial of a motion for summary judgment is not ordinarily appealable, an exception to this rule exists when the denial of summary judgment is based on rejection of a statutory or official immunity defense." *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 655 (Minn. 2004). This is because "immunity from suit is effectively lost if a case is erroneously permitted to go to trial." *Gleason v. Metro. Council Transit Operations*, 582 N.W.2d 216, 218 (Minn.1998).

On appeal from summary judgment, we must determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). When reviewing a denial of summary judgment based on a claim of immunity, we assume the facts alleged by the nonmoving party are true. *Burns v. State*, 570 N.W.2d 17, 19 (Minn. App. 1997). "Whether government entities and public officials are protected by . . . official immunity is a legal question which this court reviews de novo." *Johnson v. State*, 553 N.W.2d 40, 45 (Minn. 1996). The party asserting immunity has the burden of demonstrating entitlement to that defense. *Rehn v. Fischley*, 557 N.W.2d 328, 333 (Minn. 1997).

## II.     Common-law official immunity

"Common law official immunity generally applies to prevent a public official charged by law with duties which call for the exercise of his judgment or discretion from

4

being held personally liable to an individual for damages." *Schroeder v. St. Louis Cnty.*, 708 N.W.2d 497, 505 (Minn. 2006) (quotation omitted). "[W]hether official immunity applies turns on: (1) the conduct at issue; (2) whether the conduct is discretionary or ministerial and, if ministerial, whether any ministerial duties were violated; and (3) if discretionary, whether the conduct was willful or malicious." *Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 462 (Minn. 2014). "The purpose of official immunity is to protect public officials 'from the fear of personal liability that might deter independent action and impair effective performance of their duties.'" *Ireland v. Crow's Nest Yachts, Inc.*, 552 N.W.2d 269, 272 (Minn. App. 1996) (quoting *Elwood v. Rice Cnty.*, 423 N.W.2d 671, 678 (Minn. 1988)), *review denied* (Minn. Sept. 20, 1996).

But "common law official immunity does not protect officials when they are charged with the execution of ministerial, rather than discretionary, functions." *Anderson*, 678 N.W.2d at 655.

> Imposing liability for discretionary acts would deter public officials from exercising their judgment when making the difficult decisions often necessary to effectuate the public policies mandated by law. On the other hand, imposing liability for ministerial acts merely encourages public officials to exercise care while performing duties that require little or no independent judgment.

*S.W. v. Spring Lake Park Sch. Dist. No. 16*, 592 N.W.2d 870, 875 (Minn. App. 1999), *aff'd mem.*, 606 N.W.2d 61 (Minn. 2000).

"[T]he discretionary-ministerial distinction is a nebulous and difficult one . . . ." *J.W. ex rel. B.R.W. v. 287 Intermediate Dist.*, 761 N.W.2d 896, 902 (Minn. App. 2009) (quotation omitted). When determining whether conduct is discretionary or ministerial,

we "focus . . . on the nature of the act." *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006) (quoting *Anderson*, 678 N.W.2d at 656) (internal quotation marks omitted). A duty is discretionary if it involves "individual professional judgment that necessarily reflects the professional goal and factors of a situation." *Id.* at 490-91 (quoting *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn. 1998)) (internal quotation marks omitted); *see, e.g.*, *Vassallo*, 842 N.W.2d at 463-64 (holding that police officer's decision to proceed through intersection at high speed with squad car's lights on but sirens off was discretionary); *Kari v. City of Maplewood*, 582 N.W.2d 921, 925 (Minn. 1998) (holding that paramedic's driving in response to emergency was discretionary); *Watson v. Metro Transit Comm'n*, 553 N.W.2d 406, 415 (Minn. 1996) (holding that bus driver's decision not to stop bus when gang members assaulted and threatened to kill passengers was discretionary); *Pletan v. Gaines*, 494 N.W.2d 38, 41 (Minn. 1992) (holding that police offer's decision to engage in high-speed chase was discretionary).

By contrast, a "ministerial" duty is "one that is 'absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts.'" *Anderson*, 678 N.W.2d at 656 (quoting *Wiederholt*, 581 N.W.2d at 315). A ministerial duty need not be "imposed by law" and may arise from an "unwritten policy" or "protocol" that dictates a particular course of conduct. *Id.* at 657-59. And the "mere existence of some degree of judgment or discretion will not necessarily confer common law official immunity; rather, the focus is on the nature of the act at issue." *Id.* at 656; s*ee, e.g.*, *Schroeder*, 708 N.W.2d at 506-08 (holding that road-grader operator's decision

6

to grade against traffic was discretionary but operation of the grader after sunset without activating lights was "clearly ministerial"); *Anderson*, 678 N.W.2d at 657-59 (holding that unwritten protocol imposed ministerial duty on high school teacher concerning safe operation of table saw); *Wiederholt*, 581 N.W.2d at 316 (holding that city ordinance imposed ministerial duty on sidewalk inspector to immediately repair broken sidewalk slabs); *Williamson v. Cain*, 310 Minn. 59, 61, 245 N.W.2d 242, 244 (1976) (holding that state employees demolishing abandoned house were not entitled to immunity even though the job required some degree of decision-making).

The City and Pawlak rely on *In re Alexandria Accident of Feb. 8, 1994*, for the proposition that a snowplow operator's actions, while engaged in snow-removal operations, are considered discretionary and are protected by official immunity. 561 N.W.2d 543 (Minn. App. 1997), *review denied* (Minn. June 26, 1997). But *Alexandria Accident* did not apply official immunity so broadly. In *Alexandria Accident*, a snowplow clearing a highway created a whiteout that contributed to a serious accident. *Id.* at 545. The snowplow operator's job involved assessing road, weather, and traffic conditions in deciding whether to call snowplow crews to plow the roadways and whether to plow the roadways himself. *Id.* The court concluded that official immunity applied to the snowplow operator, whose decisions while snowplowing comported with the state's snow-removal policy and "involved discretion and balancing of several factors." *Id.* at 549. The actions were "not purely ministerial" because the snowplow operator had to consider road and weather conditions to determine the appropriate speed,

time, and manner for plowing. *Id.* Such decisions "involved sufficient discretion to fall within the protection of official immunity." *Id.*

Here, Pawlak did not face a situation that involved the sort of complex, selective decision-making that is protected by common-law official immunity. Official immunity typically protects the conduct of public officials responding to uncertain circumstances that require the weighing of competing values on the grounds that these circumstances offer "little time for reflection" and often involve "incomplete and confusing information" such that the situation requires "the exercise of *significant*, independent judgment and discretion." *Pletan*, 494 N.W.2d at 41 (emphasis added). In this case, however, Pawlak's conduct involved "merely the execution of a specific duty arising from fixed and designated facts." *Anderson*, 678 N.W.2d at 656 (quotation omitted).

The City and Pawlak argue that the district court "oversimplified [Pawlak's] decision-making process" in reversing his "30,000 pound International tandem-axel dump truck equipped with a wing plow" and contend that Pawlak weighed numerous factors, including "the overall purpose of the City's snow removal operations," in determining whether and how to proceed.

We acknowledge that plowing snow is often hazardous, and snowplow operators are generally allowed to choose the manner and means of doing the job. *Schroeder*, 708 N.W.2d at 506 (holding that road-grader operator's decision to grade against traffic was discretionary in nature and protected by official immunity because he exercised individual professional judgment). But we reject the City and Pawlak's characterization of Pawlak's decision to drive his snowplow in reverse as one that warrants official

8

immunity. *See Anderson*, 678 N.W.2d at 657 n.6 ("We also reject the . . . overbroad generalization . . . that virtually every decision a teacher makes is sufficiently discretionary to warrant official immunity. As we have said many times, immunity analysis must focus on the particular conduct at issue.").

The supreme court's decision in *Williamson* is instructive. 310 Minn. at 61, 245 N.W.2d at 244. In *Williamson*, a state employee damaged a house in the course of demolishing a neighboring abandoned house. *Id.* at 60, 245 N.W.2d at 243. The supreme court concluded that while the employee "undoubtedly had to make certain decisions in doing [the] job, the nature, quality, and complexity of [the] decision-making process" in tearing down the abandoned house were clearly ministerial because the job was "simple and definite." *Id.* at 61, 245 N.W.2d at 244.

Here, Pawlak's decision to drive his snowplow in reverse was similarly ministerial because the job was simple and definite. Pawlak was stopped, waiting in a queue behind another City snowplow. He was not actively engaged in snow-removal operations when he thought that he was blocking the path of a school bus behind him. Based on "standard operating procedure," which imposed a duty to "maintain traffic flow," Pawlak decided to reverse his snowplow and began to back up. *Anderson*, 678 N.W.2d at 657-59 (holding that a ministerial duty need not be "imposed by law" and may arise from an "unwritten policy" or "protocol" that dictates a particular course of conduct). In doing so, Pawlak had an obligation to exercise due care. *See id.* at 660 ("The ministerial-conduct bar to official immunity arises when the allegation is that a ministerial duty was either not performed or was performed negligently.").

9

"[W]e focus our inquiry on the nature of the act itself and acknowledge that in doing so almost any act involves some measure of freedom of choice." *Schroeder*, 708 N.W.2d at 507. Denying immunity in this case does not implicate the concerns of deterring snowplow drivers from exercising their judgment when making the difficult decisions that may arise in the often-hazardous activity of snow removal. But when a snowplow driver is not actively engaged in snow-removal operations and performs a discrete act that requires little or no independent judgment, he or she is obligated to exercise care. Under the circumstances of this case, the nature, quality, and complexity of Pawlak's decision to drive his snowplow in reverse was clearly ministerial because the job was simple and definite; he was merely backing up his snowplow to make room for a school bus, which path he was blocking. Because Shariss alleges that Pawlak performed this ministerial duty negligently, Pawlak is not entitled to common-law official immunity.

## III.    Vicarious official immunity

The City argues that it is entitled to official immunity based on Pawlak's official immunity. "In general, when a public official is found to be immune from suit on a particular issue, his government employer will enjoy vicarious official immunity from a suit arising from the employee's conduct." *Id.* at 508. Here, however, Pawlak's conduct is not protected by common-law official immunity. Accordingly, the City is not entitled to vicarious official immunity, and the district court did not err in denying summary judgment.

10

# D E C I S I O N

Because we conclude that Pawlak's decision to drive his snowplow in reverse, when not actively engaged in snow-removal operations, required the performance of a simple and definite act under circumstances that were fixed and designated, the district court properly denied Pawlak common-law official immunity and the City vicarious official immunity from Shariss's negligence claim. We affirm the district court's denial of summary judgment to appellants and remand for proceedings not inconsistent with this opinion.

**Affirmed.**