**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0796**

Nathan Kariniemi, et al.,
Respondents,

vs.

City of Rockford,
Appellant.

**Filed May 18, 2015
Affirmed in part, reversed in part, and remanded
Smith, Judge**

Wright County District Court
File Nos. 86-CV-12-7129, 27-CV-12-22558

Todd M. Johnson, Scott A. Johnson, Hellmuth & Johnson, PLLC, Edina, Minnesota (for respondents/cross-appellants)

Paul A. Merwin, League of Minnesota Cities, St. Paul, Minnesota (for appellant/cross-respondent)

Considered and decided by Chutich, Presiding Judge; Rodenberg, Judge; and Smith, Judge.

**S Y L L A B U S**

Contractors are protected by official immunity when functioning as city officials.

**O P I N I O N**

**SMITH**, Judge

We affirm the district court's dismissal of respondents' negligent-approval claims on the basis of statutory immunity and their negligent-design claims on the basis that contractors hired to perform city functions are protected by common-law official

immunity. But we reverse and remand the district court's denial of appellant's summary-judgment motion on respondent's nuisance claim because the claim relates to the same conduct as respondents' negligence-based claims.

**FACTS**

In 2001, appellant City of Rockford entered into an agreement with a developer to build townhomes on land within the city. The agreement provided that the city would design and construct various improvements, including storm sewers, ditches, water-retention ponds, erosion-control measures, and street grading. It authorized the city engineer to determine when the improvements had been satisfactorily completed. The agreement also provided that "additional erosion and drainage control requirements" could be imposed at "any time when, in the sole opinion of the City Engineer, they would be useful and appropriate," and it required the developer to comply with any emergency actions relating to erosion or flooding as "determined at the sole discretion of [the] City." The city council approved the project, requiring that "all grading, drainage, utilities and easements are subject to review and approval of the City Engineer."

At the time of the agreement, the services of the city engineer were provided by a contract engineering company, Bonestroo, Rosene, Anderlik and Associates.[1] The contract between the city and Bonestroo required that Bonestroo "provide planning, design, and construction-related services for public improvement projects." Acting as city engineer, Bonestroo designed and approved the storm-drainage improvements for the

---

[1] Bonestroo was acquired by Stantec Consulting Services, Inc., in July 2011. But because the contractor was called Bonestroo at all points relevant to this litigation, we refer to it as such.

development referenced in the 2001 agreement. The storm-drainage improvements were designed to adequately handle a once-every-ten-years rain event.

As of May 31, 2011, appellants Nathan and Sanna Kariniemi resided in a home on land adjacent to the land developed under the 2001 agreement. On that date, their property experienced flooding after a rainstorm, resulting in damage to their home. A wetland has also formed on part of their property.

In October 2012, the Kariniemis sued the city, alleging that the city had been negligent by designing, approving, and constructing an inadequate storm-drainage system. They also alleged that the city's design, approval, or construction of inadequate storm-drainage system created a nuisance on their property.

On March 17, 2014, the district court granted the city's motion for summary judgment on the Kariniemis' negligence claims. With regard to the Kariniemis' negligent-approval claim, it ruled that the city's decision to approve the storm-drainage design "was clearly of a policy-making nature for which a balancing of economic, social, and political considerations [was] necessary," and that the city was therefore immune from suit for its regulatory approval of the storm-drainage design under Minn. Stat. § 466.03, subd. 6 (2012). It also ruled that the city was vicariously immune to the Kariniemis' negligent-design claim because Bonestroo was immune under the common-law doctrine of official immunity for its design work while acting as the city engineer.

The district court also ruled, however, that neither statutory nor common-law official immunity barred the Kariniemis' claim for negligent construction. It nonetheless dismissed this claim without prejudice, ruling that the Kariniemis had failed to plead any

3

facts that negligent construction, as opposed to negligent design, caused the flooding on their property.

The district court also found that the city had failed to timely raise immunity in regard to the Kariniemis' nuisance claims, and it therefore denied the city's motion for summary judgment on those claims.

The city appealed the district court's denial of its motion for summary judgment on the nuisance claim, and, in a properly noticed related appeal, the Kariniemis challenged the district court's grant of summary judgment on their negligent-design and negligent-approval claims.

## ISSUES

I. Did the district court err by granting summary judgment to the city on the Kariniemis' negligent-approval claim?

II. Did the district court err by granting summary judgment to the city on the Kariniemis' negligent-design claim?

III. Did the district court err by denying summary judgment on the Kariniemis' nuisance claim?

## ANALYSIS

### I.

Because we must answer the question of whether official immunity applies at all before we can address the district court's ruling that it does not bar the Kariniemis' nuisance claim, we turn first to the issues raised in the Kariniemis' related appeal. Although the Kariniemis challenge the district court's ruling that statutory immunity barred their negligent-approval claim, their arguments focus solely on the purportedly

4

negligent *design* of the storm sewer, addressing such factors as the size of the culvert and the drains. The Kariniemis do not discuss the city's regulatory-approval process. Since the determination of whether statutory immunity applies requires first "identify[ing] the *precise* government conduct being challenged," *Nusbaum v. Cnty. of Blue Earth*, 422 N.W.2d 713, 722 (Minn. 1988) (emphasis added), the Kariniemis' focus on the design of the storm-drainage system waives a challenge to the district court's negligent-approval ruling. *See In re Application of Olson for Payment of Servs.*, 648 N.W.2d 226, 228 (Minn. 2002) (holding that "issues not 'argued' in the briefs are deemed waived on appeal" and that "the threshold is whether an issue was addressed in the 'argument portion' of the brief").

## II.

The Kariniemis challenge the district court's ruling that their negligent-design claim is barred by vicarious official immunity, arguing that no Minnesota caselaw supports extending official immunity to contractors and that to do so would "abrogate the Municipal Tort Liability Statute . . . by creating an exception to liability which would essentially 'swallow' the rule of liability itself." "The applicability of immunity is a question of law, which this court reviews de novo." *Sletten v. Ramsey Cnty.*, 675 N.W.2d 291, 299 (Minn. 2004).

> The common law doctrine of official immunity provides that a public official who is charged by law with duties calling for the exercise of judgment or discretion is not personally liable to an individual for damages unless the official is guilty of a willful or malicious act. Official immunity thus protects government officials from suit for discretionary actions taken in the course of their official

5

> duties. The doctrine is designed to protect officials from the fear of personal liability that might deter independent action.
>
> The critical distinction to be made in an official immunity determination is whether the nature of the individual official's actions are discretionary or ministerial, because only discretionary decisions are immune from suit.

*Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn. 1998) (citations and quotation omitted).

The Kariniemis do not contend that the design of the storm-drainage system was a ministerial rather than a discretionary act. They also do not dispute the district court's conclusion that, if Bonestroo enjoys official immunity, the city enjoys vicarious official immunity. *See Olson v. Ramsey Cnty.*, 509 N.W.2d 368, 372 (Minn. 1993) (holding that vicarious official immunity for a government-entity employer is essential to protect the purposes of official immunity enjoyed by an employee). Rather, they argue that, as a contractor, Bonestroo does not qualify as "a public official" eligible for the protections of official immunity. The question of whether contractors retained to perform functions typically assigned to city employees are protected by official immunity is an issue of first impression in Minnesota.

Because of the lack of Minnesota caselaw addressing the question, the district court turned to the United States Supreme Court's opinion in *Filarsky v. Delia*, 132 S. Ct. 1657 (2012). In *Filarsky*, the Supreme Court held that a private person retained as an investigator for a local fire department was immune from a lawsuit alleging violations of federally protected rights in the course of his investigation. *Id.* at 1660, 1667-68. In reaching its conclusion, the Supreme Court reviewed the common-law origins of the

6

official-immunity doctrine, noting that nineteenth-century "[l]ocal governments faced tight budget constraints, and generally had neither the need nor the ability to maintain an established bureaucracy staffed by professionals." *Id.* at 1662. "Instead, to a significant extent, government was administered by members of society who temporarily or occasionally discharged public functions." *Id.* (quotation omitted). "It was not unusual, for example, to see the owner of the local general store step behind a window in his shop and don his postman's hat." *Id.* at 1663. Accordingly, "the common law did not draw a distinction between public servants and private individuals engaged in public service in according protection to those carrying out government responsibilities." *Id.* For example, the Supreme Court noted, judicial immunity extended equally to the professional judges working at the Supreme Court and to part-time judges and justices of the peace who "often maintained active private law practices (or even had nonlegal livelihoods)." *Id.* at 1664. "Proceed[ing] on the assumption that common-law principles of . . . immunity were incorporated into our judicial system and that they should not be abrogated absent clear legislative intent to do so," *id.* at 1665 (quotation omitted), the Supreme Court held that there was "no justification" for denying the investigator the protections enjoyed by public employees doing the same work, *id.* at 1668.

The district court's reliance on *Filarsky* is well-founded. "We have long presumed that statutes are consistent with the common law, and if a statute abrogates the common law, the abrogation must be by express wording or necessary implication." *Brekke v. THM Biomedical, Inc.*, 683 N.W.2d 771, 776 (Minn. 2004) (quotation omitted). The facts here are closely analogous to those identified by the Supreme Court as

7

commonly found in local governance in the nineteenth century. The city has elected to contract that function to Bonestroo. A city should not lose vicarious official immunity merely because it chooses outsource some of its functions. In our view, such a holding would severely compromise the flexibility of smaller cities as they seek to efficiently obtain services at a lower volume than that often required by larger cities. Because Bonestroo was functioning as the city's engineer, we conclude that the district court did not err by ruling that Bonestroo enjoyed official immunity for discretionary acts in that role, including its design of the storm-drainage system.

The Kariniemis assert that this extension would destroy Minnesota's Municipal Tort Liability Statute by, for example, allowing road contractors to escape liability for "creating dangerous holes in the ground during their construction." This fear is not well-founded. Official immunity for design does not necessitate official immunity for construction.

"Unlike statutory immunity, official immunity protects the kind of discretion that is exercised on an operational rather than a policymaking level. But the discretion involved with official immunity requires something more than the performance of ministerial duties." *Sletten*, 675 N.W.2d at 301-02 (quotation omitted). "If the activity is absolute, certain, and imperative, involving the execution of a specific duty arising from fixed and designated facts, it will be deemed ministerial, and official immunity will not be available." *Id.* at 304. Design involves the application of expertise and discretion, balancing the often-competing considerations of cost, quality, and aesthetics; construction executes the requirements of the resulting design. *Compare Seaton v. Scott*

8

*Cnty.*, 404 N.W.2d 396, 398-99 (Minn. App. 1987) (holding that county had official immunity for discretionary act of designing a bridge without guardrails unless county had prior notice that it would produce a dangerous condition), *review denied* (Minn. Jun. 25, 1987), *with Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316 (Minn. 1998) (holding that city inspector's failure to comply with statutory directive to "immediately repair" broken sidewalk slabs was not discretionary act protected by official immunity). For example, an architect prepares blueprints, and a builder executes the "specific duty arising from" the design specified by those blueprints. Although the role of builder undoubtedly involves application of considerable skill and expertise, it cannot be said to be the same kind of discretion vested in the architect. The architect's role is professional, the builder's ministerial. Accordingly, armoring the architect with official immunity does not require also armoring the builder. *Cf. Shariss v. City of Bloomington*, 852 N.W.2d 278, 282-83 (Minn. App. 2014) (holding that snowplow operator's decision to move in reverse to avoid obstructing traffic was ministerial because it did not "involve[] the sort of complex, selective decision-making that is protected by common-law official immunity"). Similarly, holding that a road-construction contractor functioning as a city engineer would be protected by official immunity for the design of a roadway does not in itself foreclose liability for defects in the same contractor's construction of the roadway. The Kariniemis' argument about destroying Minnesota's Municipal Tort Liability Statute by extending official immunity to contractors performing city functions is therefore overblown.

## III.

The city challenges the district court's denial of summary judgment on the Kariniemis' nuisance claim. "In an official immunity analysis, notwithstanding the difference between negligence and nuisance, the focus is on the kind of discretion which is exercised for immunity to be available . . . ." *Id.* at 305. Because the Kariniemis allege that the same conduct by Bonestroo—its design of the storm-drainage system—was negligent and caused a nuisance, the determination of whether immunity applies is the same with regard to both types of claims. As discussed above, official immunity applies to claims arising from Bonestroo's design. Although the Kariniemis contend that the record contains conflicting information regarding "who made the policy or engineering decisions relating to the storm sewer at issue and how independent the engineers were," this assertion is without basis in the record. The record is clear that Bonestroo was solely responsible for functioning as the city's engineer and for designing the storm-drainage system. Official immunity therefore bars the Kariniemis' nuisance claim just as it bars their negligent-design claim.

The district court, however, denied summary judgment because it found that the city had not timely raised immunity with regard to the Kariniemis' nuisance claims. But untimeliness cannot be used to bar an immunity claim because such a claim "involves the issue of subject matter jurisdiction" and therefore "can be raised at any point in the proceedings." *Schaeffer v. State*, 444 N.W.2d 876, 879 (Minn. App. 1989). We therefore reverse the district court's denial of summary judgment and remand with instructions to dismiss the Kariniemis' nuisance claim.

10

## D E C I S I O N

Because the Kariniemis do not offer any argument to support their contention that statutory immunity does not bar their negligent-approval claim and because official immunity protects contractors when they are functioning as city officials, we affirm the district court's grant of summary judgment to the city on the Kariniemis' negligence claims. Because official immunity also bars the Kariniemis' nuisance claims, we reverse the district court's denial of the city's summary judgment motion on that claim and remand for the district court to dismiss it.

**Affirmed in part, reversed in part, and remanded.**