*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0999**

Steven Igou,
Appellant,

vs.

Garden City Township, et al.,
Respondents.

**Filed December 19, 2016
Affirmed
Smith, John, Judge**[*]

Blue Earth County District Court
File No. 07-CV-14-4559

Ken D. Schueler, Derek S. Rajavuori, Dunlap & Seeger, P.A., Rochester, Minnesota (for appellant)

Paul D. Reuvers, Brian P. Taylor, Iverson Reuvers Condon, Bloomington, Minnesota (for respondents)

Considered and decided by Reyes, Presiding Judge; Smith, Tracy M., Judge; and

Smith, John P., Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH, JOHN**, Judge

We affirm the district court's grant of summary judgment because claims of negligence involving a snowplow operator's recruitment of a passerby to assist with ice removal are barred by official immunity and vicarious official immunity.

**FACTS**

Respondent Wayne Kendall was employed by respondent Garden City Township (township) and as a part of his duties, he was "responsible for all aspects of plowing and sanding." Kendall was performing his duties as the township's snow and ice removal employee in February 2012 when he arrived at a "steep and icy hill" on a dead end road, with access only from the top of the hill. Kendall drove a township-owned sanding truck equipped with a snowplow. The truck's gravel box held a sand-and-chloride mixture that flowed through a gate, onto an auger, and into a spreader, which would spread the sand onto the ground below the rear of the truck. When Kendall arrived at the top of the steep icy hill, he began backing down the hill, ensuring that the sand and salt landed on each stretch of ice before his wheels hit it. He sanded the first 50 feet, then discovered the sand was not sliding into the auger. Kendall returned to the top of the hill, got into the box of the truck and shoveled some sand into the auger, started the truck again, and traveled approximately 60 feet before the sand flow once again stopped. Kendall returned to the top of the hill once more, and saw appellant Steven Igou parking his car.

Kendall then "asked [Igou] to assist him by having [Igou] climb into the plow truck and to help by using a shovel to keep the sand mixture and auger from clogging." Igou

2

testified in his deposition that Kendall warned him: "Don't get your leg in the auger." Igou agreed to assist Kendall, and got into the box of the truck and began shoveling. Kendall began to back the truck down the hill with Igou in the box, and a quarter of the way down the hill, the truck started sliding backwards, and Igou jumped off the truck. Igou landed 25-30 feet away from the truck and sustained injuries.

Igou sued Kendall and the township (collectively, respondents) for damages arising out of Kendall's recruitment of Igou and subsequent operation of the truck while Igou was standing in the box. Respondents moved for summary judgment, arguing that Kendall was entitled to official immunity and the township was accordingly entitled to vicarious official immunity, and that they were entitled to snow-and-ice immunity. The district court granted the summary-judgment motion on the basis that Kendall's actions were entitled to official immunity and the township accordingly had vicarious official immunity, and that both respondents were entitled to statutory snow-and-ice immunity. Igou appeals on both grounds.

**D E C I S I O N**

Summary judgment is appropriate where there is no genuine issue as to any material fact and judgment is warranted as a matter of law. Minn. R. Civ. P. 56.03. "When reviewing a summary judgment ruling, we consider the evidence in the light most favorable to the nonmoving party." *Schroeder v. St. Louis Cty.*, 708 N.W.2d 497, 503 (Minn. 2006). We therefore "assume the facts alleged by the nonmoving party are true." *Shariss v. City of Bloomington*, 852 N.W.2d 278, 281 (Minn. App. 2014). "The applicability of immunity is a question of law, which we review de novo." *Wiederholt v. City of Minneapolis*, 581

3

N.W.2d 312, 315 (Minn. 1998); *see also Hoff v. Surman*, 883 N.W.2d 631, 633 (Minn. App. 2016).

The district court determined that Kendall was entitled to common law official immunity, and that the township was accordingly entitled to vicarious immunity. Igou challenges this ruling, arguing that because his claims "do not revolve around Kendall's decision to sand the hill, the approach he employed to complete his objective, or any other action typically incidental to snow-removal operations," a grant of official immunity was improper.

Official immunity "protects government officials from suit for discretionary actions taken in the course of their official duties." *Wiederholt*, 581 N.W.2d at 315. "Official immunity involves the kind of discretion which is exercised on an operational rather than a policymaking level, and it requires something more than the performance of 'ministerial' duties." *Pletan v. Gaines*, 494 N.W.2d 38, 40 (Minn. 1992). When determining whether official immunity applies, we must determine what conduct is at issue, whether that conduct was undertaken in the performance of a discretionary or ministerial duty, and finally, if the conduct was willful or malicious. *Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 462 (Minn. 2014).

We must first "identify the specific conduct at issue." *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 656 (Minn. 2004). Igou's claims are based on two of Kendall's actions: his decision to recruit an untrained passerby to assist him in running the truck, and his decision to drive while Igou was in the box of the truck.

4

Next, we must determine whether this conduct at issue was ministerial or discretionary. *Vassallo*, 842 N.W.2d at 462. "[O]nly discretionary decisions are immune from suit." *Wiederholt*, 581 N.W.2d at 315. An employee's decisions are discretionary if they "call for the exercise of his judgment or discretion." *In re Alexandria Accident of Feb. 8, 1994*, 561 N.W.2d at 543, 548 (Minn. App. 1997), *review denied* (Minn. June 26, 1997) (quoting *Elwood v. County of Rice*, 423 N.W.2d 671, 677 (Minn. 1988)). "[T]he discretionary-ministerial distinction is a nebulous and difficult one because almost any act involves some measure of freedom of choice as well as some measure of perfunctory execution." *Williamson v. Cain*, 310 Minn. 59, 61, 245 N.W.2d 242, 244 (1976). "[T]he mere existence of some degree of judgment or discretion will not necessarily confer common law official immunity; rather the focus is on the nature of the act at issue." *Anderson*, 678 N.W.2d at 656. In making this determination, courts look to whether the decision "involves the weighing of many factors." *Pletan*, 494 N.W.2d at 41; *see also Alexandria Accident*, 561 N.W.2d at 549. Courts also assess the "nature, quality, and complexity" of the employee's decision-making process, and will determine that action was taken to perform a discretionary duty where it is the result of an "evaluation" made by the employee. *Elwood*, 423 N.W.2d at 677 (quotations omitted).

In contrast, ministerial functions are "absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Wiederholt*, 581 N.W.2d at 315. Ministerial actions are those which "involv[e] merely execution of a specific duty," and independent action by the employee "is neither required nor desired." *Anderson*, 678 N.W.2d at 655; *see also Wiederholt*, 581 N.W.2d at 315. Accordingly,

5

official immunity is not properly applied where a public official fails to employ a ministerial duty or performs a ministerial duty negligently. *Schroeder*, 708 N.W.2d at 505.

Igou argues that Kendall's recruitment of Igou and subsequent decision to drive down the hill with Igou in tow were not actions performed in the course of a discretionary duty. Respondents argue that Kendall was engaged in snow removal, a discretionary duty.

Two of our previous decisions directly address official immunity in the context of snow removal. In *Alexandria Accident*, a snowplow was plowing the left lane of a highway while traveling 25 miles-per-hour, creating "white-out conditions" on the highway, resulting in a van colliding with the snowplow. 561 N.W.2d at 545. We determined that the plow driver's decision to plow the median and drive at 25 miles per hour actions were discretionary and qualified for official immunity because the plow driver had to balance several factors to make these decisions and his actions were not prohibited by any policy. *Id*. at 549.

In *Shariss v. City of Bloomington*, we considered whether a snowplow driver was entitled to official immunity when he backed into a motorist to make room for a nearby school bus to get past the snowplow. 852 N.W.2d at 280. We noted that the City's snow-removal policy did not address this particular procedure and determined that the decision to back up a snowplow did not involve "the sort of complex, selective decision-making that is protected by common-law official immunity," because immunity applies to "the conduct of public officials responding to uncertain circumstances that require the weighing of competing values." *Id*. at 280, 282. The City of Bloomington argued that the snowplow operator weighed several factors including the overall purpose of snow removal when he

6

decided to reverse. But we determined that his decision to back up the plow was ministerial and not entitled to official immunity and "when a snowplow driver is not actively engaged in snow-removal operations and performs a discrete act that requires little or no independent judgment, he or she is obligated to exercise care." *Id*. at 282.

Respondents construe these cases to create a rule that a municipality is entitled to immunity for actions taken while "actively engaged" in snowplow operations, relying upon several unpublished cases in which we have held that snowplow operations are discretionary. However, in *Shariss*, we explicitly stated that *Alexandria Accident* "did not apply official immunity so broadly" as to create a blanket rule that any snowplow operator's actions while engaged in snow removal are discretionary. *Shariss*, 852 N.W.2d at 282. Accordingly, we decline to adopt a blanket rule that all actions taken during ice removal are discretionary and instead consider whether each action is discretionary. *Vassallo*, 842 N.W.2d at 462. If deciding whether to perform the action requires balancing of several factors and the chosen course of action does not violate policy, we will determine that the duty is discretionary. *Alexandria Accident*, 561 N.W.2d at 549.

Like the snowplow operator in *Alexandria Accident*, Kendall was engaged in removing aftereffects of winter weather from the streets. *See id*. at 545. The course of action Kendall selected after he considered multiple factors, and his decision-making process was complex enough to rise above a ministerial decision. *See Pletan*, 494 N.W.2d at 41; *Elwood*, 423 N.W.2d at 677. The district court determined that:

> Kendall considered his goals and duties, and the factors of the situation, namely, that he should attempt to have someone assist with the sander so as to keep the plowing project moving

7

> along in a timely manner as to improve the road safety during a snow storm. The snowplow operator needs to balance a number of considerations, such as the township's need to maintain safe roads for the drivers on its roads, safety of the equipment operator while plowing the roads, whether it would be better to stop plowing and sanding altogether (during which time the road would not be plowed and sanded), to take the time to try to find other staff or another agency's plow operator to assist, to sand by hand, or to simply wait for help.

The record supports these factual findings—Kendall discussed these factors in his deposition and explained that he chose to recruit Igou in order to ensure the sand was spread evenly, with traction on the entire hill.

Also akin to the driver in *Alexandra Accident*, neither Kendall's recruitment of a volunteer nor his decision to travel with Igou standing in the truck violated any policy. It does not appear that the township has any written policies on the topic of recruiting a passersby (or any other general snow removal policies), and the record reflects that the policy of the township was to sand the roads so people can safely drive on them. Moreover, it appears that Kendall's actions were fairly consistent with the general course of snow removal in the history of the township. In the 1970s, before the township acquired a truck with a mechanized auger and spreader, Kendall removed snow and ice for the township with another employee, and the pair would sand this particular hill by having one of them drive the truck and the other stand in the box, shoveling sand onto the ground. Even in his most recent stint of employment with the township, Kendall has occasionally asked other volunteers to help him in this manner. In the absence of a policy, Igou argues that Kendall's duties were "prescribe[d] and define[d]" by "common sense." However, he cites to no authority allowing the courts to dictate what common sense may require in a given

8

situation. Conduct against common sense may be tortious without the doctrine of official immunity, but the doctrine shields municipalities from liability for tortious conduct where that conduct fulfills a discretionary duty.

When analyzed through the lens of *Shariss* and *Alexandria Accident*, Kendall was engaged in discretionary actions when he recruited Igou to assist him with the auger and when he drove with Igou in the sand box. Accordingly, we affirm the district court's determination that Kendall's actions were discretionary.

Igou argues that even if Kendall's decisions were discretionary, they were willful and malicious because Kendall knew the auger could cause injury if a person came into contact with it and he was aware that Igou was not a township employee with experience running the truck. The district court determined that Kendall's actions were not willful because there was no evidence of any bad faith on Kendall's part.

An official who acts willfully or maliciously is not entitled to official immunity for his actions. *Kariniemi v. City of Rockford*, 882 N.W.2d 593, 600 (Minn. 2016). An official commits willful or malicious actions if they "willfully exercise[s] [their] . . . discretion in a manner that violates a known right." *Gleason v. Metro. Council Transit Operations*, 563 N.W.2d 309, 315 (Minn. App. 1997), *aff'd in part*, 582 N.W.2d 216 (Minn. 1998). In other words, an official's action is outside the scope of immunity when the official "intentionally commits an act that they then have reason to believe is prohibited." *Rico v. State*, 427 N.W.2d 100, 107 (Minn. 1991). Our determination of willfulness is "an objective inquiry into the legal reasonableness" of the government employee's actions. *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994).

9

Viewing all facts in the best light for Igou, no fact dispute as to Kendall's willfulness or malice exists. Igou has not shown that Kendall violated any of his rights, nor pointed to any statute, rule, or policy that Kendall violated. Nothing in the record suggests Kendall recruited Igou for any reason other than to facilitate the de-icing of the hill. Igou's version of the facts paints Kendall as a snowplow operator making an "honest . . . effort" when "faced with uncertain circumstances." *Elwood*, 423 N.W.2d at 679. As such, Kendall's actions were not willful or malicious, and official immunity applies. Igou does not argue that if Kendall is entitled to official immunity, the county is entitled to vicarious official immunity.

Because we affirm the district court on the basis of official and vicarious immunity, we need not determine whether the district court properly applied snow and ice immunity.

**Affirmed.**

10