*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1161**

Jaime Lindbom as Guardian Ad Litem for Emma Lindbom,
Respondent,

vs.

Becker Independent School District, #726,
Appellant.

**Filed May 6, 2024**
**Affirmed**
**Smith, John, Judge**[*]

Wright County District Court
File No. 86-CV-21-4534

Matthew J. Barber, Schwebel, Goetz & Sieben, PA, Minneapolis, Minnesota; and

Michael D. Tewksbury, Tewksbury & Kerfeld, PA, Minneapolis, Minnesota (for respondent)

Mark A. Smith, Wrobel & Smith, PLLP, St. Paul, Minnesota (for appellant)

　　Considered and decided by Reyes, Presiding Judge; Ede, Judge; and Smith, John, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**SMITH, JOHN**, Judge

We affirm the district court's denial of appellant Becker Independent School District #726's (Becker ISD) motion for summary judgment because we agree with the district court's determination that the tasks at issue were ministerial in nature and therefore not shielded from suit by official immunity.

## FACTS

Respondent Emma Lindbom was a student at Monticello Middle School in April 2017. Lindbom uses a wheelchair and was transported to school in a van operated by Becker ISD. In April 2017, Lindbom was injured while Becker ISD staff were unloading her from the back of a transport van.

Prior to picking up Lindbom that morning, the van picked up another student who had behavioral challenges and was upset about his outfit. The student attacked the paraprofessional assigned to the van and had to be returned home before the van could continue with its designated route to pick up other students. The van completed its route and arrived at the school without further issue.

When the van arrived at Monticello Middle School, the driver went to the back of the van, opened the doors, and began unfolding the accessibility lift. While unfolding the lift, the driver was looking out for a particular school employee so he could explain why the student who had attacked the paraprofessional was not in the van. As a result, the driver was distracted as he operated the lift. The driver testified at his deposition that he "whacked" his wrist on the side of the door and "fumbled the—the controls a little bit

2

and—and then grabbed the button without looking," leading him to lower the lift before Lindbom was on it.

Meanwhile, the paraprofessional assigned to the van was unbuckling Lindbom inside the van. The paraprofessional did not notice that the lift was out of position, although she admitted that the lift was visible from inside the van, and she likely could have seen that the lift was lowered. The paraprofessional also did not verbally confirm with the driver that the lift was in position. The paraprofessional then pushed Lindbom's wheelchair out of the back of the van, expecting the lift to be in place, and Lindbom "toppled" onto the lowered lift. The driver testified that the lift was only an inch or two from the ground by the time Lindbom fell from the back of the van.

Following the accident, Lindbom sued Becker ISD, alleging the driver and paraprofessional were negligent in unloading her from the van. Becker ISD moved for summary judgment, arguing that Lindbom's claims are barred by both statutory and vicarious official immunity. Lindbom opposed the motion, arguing that statutory immunity does not apply because the suit concerns operational tasks, rather than planning decisions. Lindbom argued that official immunity does not apply because unloading a wheelchair-bound student from a van is a ministerial task, not a discretionary task. Becker ISD conceded that statutory immunity was inapplicable because Lindbom's claims were not based on Becker ISD's training or policies. Becker ISD maintained, however, that common-law official immunity insulates it from Lindbom's claims because the duties and functions carried out by the driver and paraprofessional required discretion to execute.

The district court denied Becker ISD's summary-judgment motion, determining that the tasks performed by the driver and paraprofessional were ministerial in nature and therefore Becker ISD was not shielded from suit by official immunity. This appeal follows.

**DECISION**

On appeal, Becker ISD argues the district court erred in determining the tasks at issue were ministerial in nature, and, therefore, erred in concluding official immunity does not apply. To make its argument, Becker ISD focuses on the broader responsibilities of the driver and paraprofessional, arguing that "transportation staff were required to exercise their discretion while transporting special needs students and were required to execute several duties and obligations simultaneously."

"Official immunity provides immunity from suit, not just from liability. Therefore, the denial of a summary-judgment motion based on immunity is immediately appealable because the immunity is effectively lost if the case is erroneously permitted to go to trial." *Sletten v. Ramsey County*, 675 N.W.2d 291, 299 (Minn. 2004) (citation omitted). "We review the grant of summary judgment de novo to determine whether there are genuine issues of material fact and whether the district court erred in its application of the law." *Montemayor v. Sebright Prods., Inc.*, 898 N.W.2d 623, 628 (Minn. 2017) (quotation omitted). "The applicability of immunity is a question of law, which this court reviews de novo." *Sletten*, 675 N.W.2d at 299.

"Common law official immunity generally applies to prevent a public official charged by law with duties which call for the exercise of his judgment or discretion from being held personally liable to an individual for damages." *Schroeder v. St. Louis County*,

4

708 N.W.2d 497, 505 (Minn. 2006) (quotation omitted). The purpose of official immunity is to enable government actors "to perform their duties effectively, without fear of personal liability that might inhibit the exercise of their independent judgment." *Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 462 (Minn. 2014). The applicability of official immunity "turns on: (1) the conduct at issue; (2) whether the conduct is discretionary or ministerial and, if ministerial, whether any ministerial duties were violated; and (3) if discretionary, whether the conduct was willful or malicious." *Id.*

"[T]he discretionary-ministerial distinction is a nebulous and difficult one because almost any act involves some measure of freedom of choice as well as some measure of perfunctory execution." *Williamson v. Cain*, 245 N.W.2d 242, 244 (Minn. 1976) (per curiam). To make the distinction, the court should "focus . . . on the nature of the act." *Vassallo*, 842 N.W.2d at 462 (alteration in original) (quoting *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006)).

"A duty is discretionary if it involves 'individual professional judgment that necessarily reflects the professional goal and factors of a situation.'" *Shariss v. City of Bloomington*, 852 N.W.2d 278, 281 (Minn. App. 2014) (quoting *Mumm*, 708 N.W.2d at 490-91). Such duties typically involve "public officials responding to uncertain circumstances" that "offer 'little time for reflection' and often involve 'incomplete and confusing information' such that the situation requires 'the exercise of *significant*, independent judgment and discretion.'" *Id.* at 282 (quoting *Pletan v. Gaines*, 494 N.W.2d 38, 41 (Minn. 1992)). Examples of discretionary acts include a police officer's "decision to engage in a high-speed chase," a "bus driver's decision not to stop [a] bus when gang

5

members assaulted and threatened to kill passengers," and a "paramedic's driving in response to an emergency." *See id.* at 281-82 (collecting cases).

Ministerial duties, by contrast are "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Vassallo*, 842 N.W.2d at 462 (quoting *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 656 (Minn. 2004)). "[T]he mere existence of some degree of judgment or discretion will not necessarily confer common law official immunity; rather, the focus is on the nature of the act at issue." *Anderson*, 678 N.W.2d at 656.

In this case, we conclude that the act of unloading a wheelchair-bound student from the back of a district transport van was ministerial in nature. Becker ISD's argument on appeal frames the relevant conduct too broadly by focusing on the multiple responsibilities the driver and paraprofessional had to balance over the course of their workday. The caselaw is clear, however, that the court "must focus on the particular conduct at issue." *Id.* at 657 n.6; *see also Vassallo*, 842 N.W.2d at 462 ("When determining whether conduct is discretionary or ministerial, we 'focus . . . on the nature of the act.'" (alteration in original) (quoting *Mumm*, 708 N.W.2d at 490)). Here, the conduct at issue was the unloading of Lindbom from the back of the van. This is the sort of "absolute, certain, and imperative" task that involves "merely the execution of a specific duty arising from [the] fixed and designated fact[]" that the van had arrived at the school. *See Vassallo*, 842 N.W.2d at 462. There is no discretion involved in ensuring that a lift is in place for a wheelchair-bound student to be safely lowered from a van.

6

Our decision in *Shariss* is instructive. In *Shariss,* a snowplow owned by the City of Bloomington backed into the plaintiff's car while the plaintiff pulled out of a driveway onto the road. 852 N.W.2d at 280. There, we acknowledged that "plowing snow is often hazardous, and snowplow operators are generally allowed to choose the manner and means of doing the job." *Id.* at 283. However, "when a snowplow driver is not actively engaged in snow-removal operations and performs a discrete act that requires little or no independent judgment, he or she is obligated to exercise care." *Id.* And because the particular conduct at issue (backing up a snowplow to make room for a school bus) was "simple and definite," the snowplow driver's "decision to drive his snowplow in reverse was clearly ministerial." *Id.*

Similarly, in this case, we have no doubt that the Becker ISD driver and paraprofessional perform discretionary tasks on a regular basis. However, the positioning of the lift did not involve discretionary decision-making—it was a safety issue that was definite and discrete, and required no independent judgment. We therefore conclude that the conduct at issue was ministerial, and the driver and paraprofessional were obligated to exercise due care in unloading Lindbom. The district court appropriately denied Becker ISD's motion for summary judgment.

**Affirmed.**

7