In re ALEXANDRIA ACCIDENT
OF FEBRUARY 8, 1994.

Nos. C7–96–2178, C9–96–2179.

Court of Appeals of Minnesota.

April 1, 1997.

Michael S. Montgomery, Richard N. Jeffries, Jeffries, Olson, Flom & Bullis, P.A., Moorhead, for appellant Richards Transportation Company.

Hubert H. Humphrey, III, Attorney General, David T. Schultz, Assistant Attorney General, St. Paul, for respondents State of Minnesota and Lester Syverson.

Daniel A. Haws, Murnane, Conlin, White & Brandt, P.A., St. Paul, for John D. Carlson, L.D. Leasing Corp., Inc., C.T. Travel, Inc., and Riley Bus Service.

Steven J. Cahill, Cahill & Marquart, Moorhead, for Diana Jilek and Josef's School of Hair Design.

J.P. Dosland, Dosland, Norghougen, Lillehaug & Johnson, P.A., Moorhead, for appellants Ivy Brown, et al.

Considered and decided by HUSPENI, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

PARKER, Judge.

Appellants contest the district court's grant of summary judgment to respondents for interpleader claims arising from a multiple-vehicle accident. Appellants contend the district court erred in finding their claims for damages barred by statutory immunity, official immunity, and snow and ice immunity. Appellants Richards Transportation and Olson School and Charter Bus Service also challenge the court's determination that the Minnesota Tort Claims Act barred their claim for contribution. We affirm.

## FACTS

This case arises out of a major automobile accident on February 8, 1994, involving a Minnesota Department of Transportation (MnDOT) snowplow, a van, and a charter bus on Interstate 94 around 8:30 a.m. near Alexandria, Minnesota. Early in the morning, Lester Syverson, a MnDOT snowplow operator and early-morning watchman, began his shift. His duties included observing weather and road conditions and, if necessary, calling in a crew to plow or sand the roads of the district. Syverson noted bad driving conditions on the way to work and decided to call out a snowplow crew.

The morning crew began plowing around 4 a.m. Syverson himself plowed all four lanes of I–94 from Highway 114 to the Osakis exit. Syverson decided to plow the left lanes again because the snow, which had accumulated to a couple of inches, had already drifted from the shoulders into the driving lanes. Syverson decided to "wing" the shoulder while he plowed to prevent further drifting of snow into the lanes. He returned to the truck station at approximately 7 a.m. and dropped the left wing from its cradle. He began plowing the left lane and clearing the median shoulder, driving 25 m.p.h.

On the same morning, 13 students and two employees of Josef's School of Hair Design left Fargo for Minneapolis in a van driven by Dianna Jilek. The van passed a chartered bus driven by John Carlson and a Spee–Dee delivery truck. The van was traveling approximately 65 m.p.h. As the van proceeded in the passing lane, it came upon white-out conditions, and Jilek could see nothing. She removed her foot from the accelerator, saw "an orange flash," and veered the van hard to her right. The front of the van struck the rear of Syverson's snowplow, causing the van to spin in the roadway. The van was then struck by the bus. Seven passengers in the van were killed. Others in the van and bus suffered injuries.

Respondents State of Minnesota and Syverson brought an action in the district court interpleading parties with claims arising out of the accident. The district court granted the petition and recaptioned the case, which then included the passengers in the van and the bus, the drivers, the van owners and operators, and the bus owners and operators. The bus and van owners and operators raised claims for contribution.

Prior to the accident, MnDOT had undertaken a study of snowplow accidents. The study indicated that a contributing factor to such accidents was the snowplow's creation of "snow clouds," or "white-out" conditions. Consequently, MnDOT developed a better lighting system which it decided to install on its newer vehicles. It started with 1988 models because "there was enough remaining life on those trucks to make it worthwhile."

Only two snowplows in the Alexandria station were equipped with new lighting systems. These vehicles and their respective operators were assigned to the routes on I–94. In 1993, one of the vehicles (the one assigned to Syverson) was sent away for installation of some additional equipment. Because the vehicle had not returned by winter 1993–94, Syverson used a "spare," older vehicle that did not have the new lights.

The state asserted that Syverson's activities on the day in question followed MnDOT's "bare pavement" policy, described in the MnDOT Maintenance Manual. This policy strives to clear all roadways down to bare pavement. The manual indicates that this policy evolved from considerations of safety, efficiency, budgetary constraints, and public appeal. One MnDOT highway supervisor explained that if there is snow on the roadway itself, or if it is drifting onto the roadway from the shoulder, then snowplow operators are instructed to plow the driving lane and clear the shoulder to push the snow back as far as possible.

The MnDot Ice and Snow Removal Manual states that

to help minimize the dangers of the snow cloud, consider the following recommendations: if snow on the shoulder is not causing a hazard and winging creates visibility problems, delay winging until conditions change.

The manual also states that a plow driver may consider delaying winging operations until non-peak hours. The record indicates Syverson observed that the snow on the shoulder caused a hazard that day and that he concluded he should wing the shoulder to prevent further problems. Syverson also testified that peak hours on this section of I–94 were around 10 a.m., not 8:30 a.m.

After completion of discovery, the state and Syverson moved for summary judgment. The district court found the plaintiffs' claims against them to be barred by statutory discretionary immunity, snow and ice immunity, and official immunity. The court also concluded that the claims for contribution were barred by the Minnesota Torts Act and by *Pierringer* releases. The passengers of the van and bus (including the van driver) and Richards Transportation now seek review of the final judgment under Minn.R.Civ.App.P. 104.01.

## ISSUES

I. Did the district court err in determining that statutory discretionary immunity barred appellants' claims?

II. Did the district court err in determining that common law official immunity barred appellants' claims?

III. Did the district court err in determining that statutory snow and ice immunity barred appellants' claims?

IV. Did the district court err in determining that the Tort Claims Act barred the contribution claims?

## ANALYSIS

Summary judgment is appropriate when a governmental entity establishes that its actions are immune from liability. *See Ostendorf v. Kenyon,* 347 N.W.2d 834, 836 (Minn.App.1984). Whether governmental action is protected by immunity is a question of law. *Zank v. Larson,* 552 N.W.2d 719, 721 (Minn.1996).

Appellants claim various acts of negligence by the state and Syverson caused the multi-

ple-vehicle accident. They argue the district court erred in holding the state and Syverson immune from liability on all of their claims for damages and from claims for contribution.

### I. Statutory Discretionary Immunity

 State law immunizes governmental entities from tort claims "caused by the performance or failure to perform a discretionary duty, whether or not the discretion is abused." Minn.Stat. § 3.736, subd. 3(b) (1996). Statutory discretionary immunity does not, however, protect all decisions made by government agents. *Nusbaum v. County of Blue Earth,* 422 N.W.2d 713, 722 (Minn. 1988).

> The issue is not whether the government action involved the exercise of discretion in a general sense, because almost every government function does involve some exercise of discretion, but rather whether the challenged activity "involved a balancing of policy objectives." * * * Discretionary immunity protects the government only when it can produce evidence its conduct was of a policy-making nature involving social, political, or economic considerations, rather than merely professional or scientific judgments.

*Zank,* 552 N.W.2d at 721 (citations omitted).

 The courts distinguish between "operational decisions" and "planning decisions." *Steinke v. City of Andover,* 525 N.W.2d 173, 175 (Minn.1994). Planning decisions involve questions of public policy and receive protection as discretionary decisions, while operational decisions relate to the day-to-day operation of government and do not receive protection. *Id.* However, the mere labeling of a governmental function is not dispositive to immunity. *Id.*

The distinction between "making" and "implementing" a policy decision may be difficult. *Pletan v. Gaines,* 494 N.W.2d 38, 44 (Minn.1992). The carrying out of a policy will naturally have consequences, and discretionary statutory immunity

> would afford little comfort if it did not extend to some of the consequences of the policy itself. Whether certain consequences are immune depends * * * on

whether the consequential conduct * * * involves the balancing of public policy considerations in the formation of policy. *Id.*

#### A. Use of snowplow with unimproved lighting.

 Appellants contend the state negligently used a snowplow with improper lighting. The facts indicate that MnDOT decided to retrofit only newer plows with the new lighting system and to continue using the other plows without the new system. This decision was based on a balancing of the cost of retrofitting each snowplow against the safety improvements from retrofitting over the expected life of the vehicles. We hold that statutory immunity protects that decision.

#### B. Failure to restructure snowplow schedule.

 Appellants contend the state scheduled its snowplows negligently because it scheduled vehicles with the old lighting to plow the interstate. Only two snowplows in the Alexandria station were equipped with the new lighting system. The vehicle with new lights that was assigned to Syverson was unavailable on the day in question. Syverson used a "spare," older vehicle that did not have the new lights.

Appellants contend the use of this vehicle was not a policy decision because no effort was made to restructure the schedule and have better equipment plow I–94. But, MnDOT's decision to allow plows with the older lights to remain in service on interstate highways balanced financial resources against safety concerns; statutory discretionary immunity applies to such calculations.

Appellants essentially argue that MnDot should have made different scheduling decisions. Such second-guessing is prohibited by statutory immunity; prioritizing decisions such as this are protected. *See Watson v. Metropolitan Transit Com'n,* 553 N.W.2d 406, 413 (Minn.1996) (decision on how most effectively to deploy security resources on buses constitutes planning-level conduct protected by statutory immunity); *McEwen v. Burlington N. R.R. Co., Inc.,* 494 N.W.2d

313, 316–17 (Minn.App.1993), *review denied* (Minn. Feb. 25, 1993) (decision not to upgrade warning devices at railroad crossing immune when decision was in accordance with priority rating system that balanced financial constraints and safety). We affirm the district court's conclusion applying statutory immunity to this issue.

### C. Failure to train and supervise plow operators effectively.

■ Appellants contend the state's negligence in training and supervising snowplow operators should not be entitled to protection. Training of employees generally falls within statutory discretionary immunity protection. *See Watson*, 553 N.W.2d at 414 (MTC's driver training decisions constituted planning-level conduct). We affirm the district court's conclusion that the decisions regarding training and supervision of the snowplow operator here involved sufficient policy considerations to require immunity protection.

### D. Failure to have effective means of conveying weather forecast information.

■ Appellants contend the state negligently failed to have an effective means of conveying weather forecast information to its snowplow drivers. Negligence in gathering the information on which an immune decision is based cannot defeat immunity protection already afforded to the decision. *See Wornson v. Chrysler Corp.*, 436 N.W.2d 472, 474–75 (Minn.App.1989), *review denied* (Minn. April 28, 1989) (negligence in information gathering for decision to install traffic signals cannot defeat immunity protection already afforded to decision of where to install signals). Therefore, any negligence in conveying weather information to Syverson could not defeat the immunity already afforded to his acts.

### E. Negligent plowing operations.

Appellants contend the state was vicariously liable for the negligent manner in which Syverson plowed the roads. Citing *Robinson v. Hollatz*, 374 N.W.2d 300, 302–03 (Minn.App.1985), appellants claim that the decision whether to plow is a planning-level decision, while the job of plowing itself is an "operational function."

■ We note that *Robinson* was "severely undercut, if not impliedly overruled" by *Holmquist. Hennes v. Patterson*, 443 N.W.2d 198, 202 (Minn.App.1989), *review denied* (Minn. Sept. 15, 1989) (citing *Holmquist v. State*, 425 N.W.2d 230, 234 (Minn.1988)). In *Holmquist*, the court recognized that the implementation of a policy itself may sometimes involve policymaking. 425 N.W.2d at 234. Actions implementing a policy may be protected by statutory immunity if the claim of negligent implementation effectively attacks the policy itself. *Id.*

Appellants claim that Syverson acted negligently in various ways. The state demonstrated that these challenged activities resulted from implementation of the state's bare-pavement policy. This policy itself was developed from considerations of safety, efficiency, budgetary constraints, and public appeal and has immunity. Because Syverson conducted his plowing according to the policy, statutory discretionary immunity may still apply to bar most of the claims for Syverson's actions. We need not analyze the application in detail, however, because official immunity protects all of Syverson's acts.

## II. Common Law Official Immunity

■ Common law official immunity provides that "a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." *Elwood v. County of Rice*, 423 N.W.2d 671, 677 (Minn.1988) (citation omitted). It is intended to protect public officials "from the fear of personal liability that might deter independent action." *Janklow v. Minnesota Bd. of Exam'rs For Nursing Home Admin.*, 552 N.W.2d 711, 715 (Minn.1996). Government officials receive near-complete immunity for actions taken in the course of their official duties, so long as they do not exceed the discretion granted to them by law. *Id.* at 716.

■ "Discretion" has a broader meaning in the context of official immunity than in the

context of statutory immunity. *Watson,* 553 N.W.2d at 414. Official immunity protects the kind of discretion that is exercised on an operational, rather than a policymaking, level. *Id.* However, the discretion still requires "something more than the performance of 'ministerial' duties." *Id.* It must be more than an "absolute, certain and imperative" duty, involving merely execution of a specific duty arising from fixed and designated facts. *Id.*

■ We note that statutory discretionary immunity and common law official immunity may operate in concert. *Janklow,* 552 N.W.2d at 715. If official immunity protects a government employee from suit, the government entity will not be liable for its employee's torts. *Watson,* 553 N.W.2d at 414.

■ All of the challenged actions taken by Syverson qualify for official immunity. The record demonstrates that these actions involved discretion and balancing of several factors. Even if the decisions did not rise to the level of discretion required for discretionary immunity, the decisions here were not purely ministerial.

While the state's policies did not mandate a speed, they did not prohibit Syverson from plowing at 25 m.p.h. Syverson had to assess the conditions and rely on his judgment to determine the appropriate speed. While the state's bare-pavement policy did not specifically mandate that Syverson plow that particular median with a wing at that time, the policy authorized it. Syverson had to assess the existing conditions and rely on his judgment to determine the best time and manner for plowing. These decisions involved sufficient discretion to fall within the protection of official immunity.

We find no merit to appellants' contention that Syverson failed to follow the guidelines of the MnDot Ice and Snow Removal Manual. The manual states that

> to help minimize the dangers of the snow cloud, consider the following recommendations: if snow on the shoulder is not causing a hazard and winging creates visibility problems, delay winging until conditions change.

Because Syverson determined that the snow on the shoulder was causing a hazard, he did not act contrary to this recommendation. The manual also states that a snowplow driver may consider delaying winging operations until non-peak hours. Syverson did not violate this policy, because he testified that 8:30 a.m. was not a peak time on this section of I–94. No evidence contradicted this information. Further, these guidelines are recommendations, not mandates. Because appellants have failed to demonstrate any violation, let alone willful negligence or malfeasance, official immunity bars the claims against Syverson and the state by way of vicarious official immunity.

### III. Statutory Snow and Ice Immunity

Governments are immune from liability for any "loss caused by snow or ice conditions on a highway * * * except when the condition is affirmatively caused by the negligent acts of a state employee." Minn.Stat. § 3.736, subd. 3(d) (1996). A claimant must show that a snow or ice condition leading to an accident was "affirmatively caused by [a] negligent act," rather than just nature. *Koen v. Tschida,* 493 N.W.2d 126, 128 (Minn.App.1992), *review denied* (Minn. Jan. 28, 1993).

■ We recognize that statutory snow and ice immunity protects government entities from liability for damages caused by the natural consequences of snow plowing when the plowing was done pursuant to established snow-removal policies and the claimants have shown no willful acts or malfeasance. *Cf. Hennes,* 443 N.W.2d at 203 (state immune from suit when it plowed snow to right side of bridge in accordance with policy, even though action created snowbank which caused an accident); *Robinson,* 374 N.W.2d at 303 (county not immune when it plowed snow into median contrary to policy).

■ Here, appellants contend that Syverson's plowing created white-out conditions which caused the accident. As discussed, appellants have failed to demonstrate that Syverson violated any plowing policies or committed any other willful acts or malfeasance when plowing the road. Therefore, snow and ice immunity applies to bar the claims.

**550**

### IV. Contribution Claims

Richards Transportation (van operators) and the bus owners, co-defendants with the State of Minnesota, have alleged that the state is liable to them in contribution. The district court concluded that those claims were barred because the Minnesota Tort Claims Act did not authorize contribution claims and were also barred by the co-defendants' own *Pierringer* releases. Because we have held all claims against the state to be barred on the ground of immunity, it is unnecessary for us to consider these additional grounds. Where an act of the state is immune from tort liability, it is correspondingly immune from a codefendant's claim for contribution.

### DECISION

Because statutory discretionary immunity, common law official immunity, and statutory snow and ice immunity bar appellants' claims, we affirm summary judgment to the state and to Syverson.

**Affirmed.**