*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1791**

Delmer V. Fladwood, et al.,
Appellants,

vs.

City of St. Paul,
Respondent.

**Filed May 9, 2016
Reversed and remanded
Kirk, Judge
Dissenting, Johnson, Judge**

Ramsey County District Court
File No. 62-CV-14-7654

Elliot L. Olsen, PritzkerOlsen, P.A., Minneapolis, Minnesota (for appellants)

Samuel J. Clark, St. Paul City Attorney, Cheri M. Sisk, Assistant City Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Kirk, Presiding Judge; Johnson, Judge; and Smith, John, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**KIRK**, Judge

Appellant, Delmer V. Fladwood, was seriously injured by a log that hit him during a City of St. Paul tree-removal project. The district court granted summary judgment in favor of respondent, City of St. Paul, on the basis of vicarious official immunity. Fladwood contends that the district court erred by granting summary judgment because the act of removing a tree is a ministerial duty, not a discretionary duty. We reverse and remand.

## FACTS

In January 2013, the City of St. Paul sent its forestry crew to remove a tree at the corner of Randolph Ave. and Victoria St., across the street from the Spot Bar. The crew removed the top portion of the tree and planned to fell the remaining trunk into the street. The crew leader decided to use logs from the top portion of the tree, each weighing several hundred pounds, to establish a "crash pad" for the trunk. A crash pad is a pile of logs placed to cushion a tree's fall in order to prevent damage to streets and sidewalks. The crew routinely used crash pads at the time the tree was removed. The crew leader believed that a crash pad was necessary to protect the street, and the crew constructed the crash pad in the middle of the street where they expected the tree's remaining trunk to fall.

Several bystanders watched as the forestry crew removed the tree. American National Standards Institute tree-removal standards, which the City of St. Paul has adopted, require bystanders to remain outside of a safe-work zone when a tree is removed. The safe-work zone extends to a radius of twice the height of a tree when a tree is removed. The

crew is responsible for keeping bystanders outside of the safe-work zone. The tree in this case was approximately 27 feet tall when it was removed, thus the safe-work zone extended 54 feet from the base of the tree. Fladwood was at the Spot Bar for drinks with friends and had stepped outside just before the tree fell. He was standing behind the crew leader and outside of the safe-work zone. The crew leader knew Fladwood was behind him and outside of the safe-work zone, and did not ask Fladwood to move further away because he believed Fladwood was in a safe place.

The trunk fell onto the crash pad as expected. But a large log unexpectedly shot out from the crash pad, striking both the crew leader and Fladwood and knocking them to the ground. Although the log did not injure the crew leader, it seriously injured Fladwood. Fladwood was taken to the hospital, where he underwent emergency surgery to repair an artery in his leg. Fladwood spent more than three months in the hospital and underwent five surgeries.

In October 2014, Fladwood sued the City of St. Paul alleging negligence. The City of St. Paul moved for summary judgment, arguing that vicarious official immunity bars Fladwood's claim. The district court granted the City of St. Paul's motion for summary judgment, concluding that vicarious official immunity applies because the crew leader's decisions to construct the crash pad and to refrain from moving Fladwood any further from the safe-work zone involved judgment and discretion.

Fladwood appeals.

**D E C I S I O N**

On appeal from summary judgment, we review de novo whether there are any genuine issues of material fact and whether the district court erred in applying the law. *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 56 (Minn. 2013). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). A genuine issue of material fact exists when there is sufficient evidence that could lead a rational trier of fact to find for the nonmoving party. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997).

The doctrine of official immunity protects public officials against personal liability for discretionary conduct unless the public official is guilty of a willful or malicious wrong. *Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 462 (Minn. 2014). The purpose of the doctrine is to "enable public employees to perform their duties without fear of personal liability that might inhibit the exercise of their independent judgment." *Id.* The doctrine "must be narrowly construed in light of the fact that it is an exception to the general rule of governmental liability." *Cairl v. State*, 323 N.W.2d 20, 23 (Minn. 1982) (quotations omitted). A government entity may claim vicarious official immunity for the conduct of its public officials when the official's conduct requires judgment or discretion, even at an operational level. *Vassallo*, 842 N.W.2d at 462; *Schroeder v. St. Louis County*, 708 N.W.2d 497, 508 (Minn. 2006). Examining whether official immunity applies requires the district court to identify the conduct at issue and then to determine whether the conduct is

4

discretionary or ministerial. *Vassallo*, 842 N.W.2d at 462. We apply a de novo standard of review to a district court's determination that official immunity applies. *Id.*

We begin by identifying the conduct at issue. Fladwood argues that the conduct at issue is the "overall act" of "cutting down a tree." The City of St. Paul contends that the conduct at issue includes the crew's (1) decision to construct a crash pad and (2) decisions regarding where bystanders could stand outside of the safe-work zone.

The supreme court's opinion in *Williamson v. Cain*, 310 Minn. 59, 245 N.W.2d 242 (1976), is instructive in identifying the conduct at issue. In *Williamson*, the supreme court considered how to characterize the conduct of state employees tasked with removing a house. 310 Minn. at 60-61, 245 N.W.2d at 243-44. Although the court acknowledged that removing a house involves many individual discretionary decisions, the court characterized the conduct at issue as the "simple and definite," overall task of "remov[ing] a house." *Id.* at 61, 245 N.W.2d at 244. This case is analogous to *Williamson*. Here, as in *Williamson*, the crew faced many individual discretionary decisions in determining how to remove the tree. But the crew's overall task was "simple and definite," to remove the tree. *See id.* For this reason, we conclude that the overall task of removing a tree is the appropriate characterization of the conduct at issue.

We next consider whether the conduct at issue is discretionary or ministerial. Discretionary conduct involves "individual professional judgment that necessarily reflects the professional goal and factors of a situation." *Vassallo*, 842 N.W.2d at 462 (quotations omitted). Ministerial conduct "is absolute, certain, and imperative, involving merely the

5

execution of a specific duty arising from fixed and designated facts." *Id.* (quotations omitted).[1] The City of St. Paul argues that the conduct at issue is discretionary because removing a tree involves discretionary decisions based on the forestry crew's professional judgment. But the mere fact that conduct requires some discretionary decision-making does not render the entire act to be discretionary. *See Cairl*, 323 N.W.2d at 23 ("[A]lmost every act involves some measure of discretion, and yet undoubtedly not every act of government is entitled to discretionary immunity."); *Williamson*, 310 Minn. at 61, 245 N.W.2d at 244 (noting "almost any act involves some measure of freedom of choice" but that did "not entitle [the officials] to immunity from suit").

Further, "[o]fficial immunity typically protects the conduct of public officials responding to uncertain circumstances that require the weighing of competing values on the grounds that these circumstances offer little time for reflection and often involve

---

[1] In examining the distinction between discretionary and ministerial acts in the application of official immunity, the district court relied heavily on what it calls "the snowplow and road grader cases." *See Schroeder*, 708 N.W.2d 497; *In re Alexandria Accident of Feb. 8, 1994*, 561 N.W.2d 543 (Minn. App. 1997), *review denied* (Minn. June 26, 1997). Those cases involved discretionary immunity at both the policy making level by the road authority and the operational level by employees. *See Schroeder*, 708 N.W.2d at 505-08; *Alexandria Accident*, 561 N.W.2d at 545, 547. At the operational level, the landscape was very dynamic for the employees, involving quickly changing road, weather, or traffic conditions. *See Schroeder*, 708 N.W.2d at 506; *Alexandria Accident*, 561 N.W.2d at 549. The present case involves a more static situation, with fixed and designated facts. The tree, like the house in *Williamson*, was just standing there. *See* 310 Minn. at 60, 245 N.W.2d at 243. There was sufficient time to develop a plan and take the necessary steps to make sure that there was no damage to other property in the area or injury to any person in the vicinity. Thus, we conclude that *Williamson* is the more analogous case for purposes of our official immunity analysis.

6

incomplete and confusing information such that the situation requires the exercise of *significant*, independent judgment and discretion." *Shariss v. City of Bloomington*, 852 N.W.2d 278, 282 (Minn. App. 2014) (quotations omitted). Minnesota courts are more likely to find official immunity in cases involving time pressure and quick decisions and less likely to find immunity in cases where public officials have ample time for consideration. *Compare Vassallo*, 842 N.W.2d at 462 (noting immunity protects police officers responding to emergencies because there is "little time for reflection"), *with Gleason v. Metropolitan Council Transit Operations*, 582 N.W.2d 216, 220 (Minn. 1998) ("Nothing about that decision requires the kind of split-second decision-making involved in a police officer deciding, for instance, whether to begin or continue a high-speed chase.").

Viewing the facts in the light most favorable to Fladwood, we conclude that the conduct in this case was ministerial. A forestry supervisor compiled a list of trees for the crew to remove, which included the tree at issue. The crew met to formulate a plan before removing the tree and had plenty of time to consider whether to use a crash pad, where to place the crash pad, and where to position bystanders before letting the tree fall. The crew's task to remove the tree was "absolute, certain, and imperative," requiring "merely the execution of [that] specific duty." *Vassallo*, 842 N.W.2d at 462 (quotations omitted). Hence, the City of St. Paul is not protected by vicarious official immunity and the district court erred by granting summary judgment on that basis.

**Reversed and remanded.**

**JOHNSON**, Judge (dissenting)

I respectfully dissent from the opinion of the court. The district court correctly concluded that the City of St. Paul is entitled to the protections of the doctrine of vicarious official immunity.

**A.**

Approximately a quarter century ago, Justice Simonett wrote that, in determining whether the doctrine of official immunity applies, "it is essential to identify the *precise* governmental conduct at issue." *Olson v. Ramsey County*, 509 N.W.2d 368, 371 (Minn. 1993) (emphasis added) (citing *Nusbaum v. Blue Earth County*, 422 N.W.2d 713, 722 (Minn. 1988)). In the intervening years, the supreme court consistently has reiterated that statement and applied that method of analysis when determining whether challenged governmental conduct is discretionary or ministerial in nature. *See Mumm v. Mornson*, 708 N.W.2d 475, 490-91 (Minn. 2006); *Thompson v. City of Minneapolis*, 707 N.W.2d 669, 673-74 (Minn. 2006); *Sletten v. Ramsey County*, 675 N.W.2d 291, 306-07 (Minn. 2004); *Gleason v. Metropolitan Council Transit Operations*, 582 N.W.2d 216, 219 (Minn. 1998); *S.W. v. Spring Lake Park Sch. Dist. No. 16*, 580 N.W.2d 19, 23-24, 23 n.20 (Minn. 1998); *Watson by Hanson v. Metropolitan Transit Comm'n*, 553 N.W.2d 406, 415 (Minn. 1996); *Steinke v. City of Andover*, 525 N.W.2d 173, 175 (Minn. 1994).

In this case, the district court properly applied the supreme court's well-established caselaw by identifying two precise types of governmental conduct: (1) "Teske's decision as to whether or not to use a crash pad and how it should be constructed," and (2) "Teske's determination as to where bystanders should be allowed to stand outside of the safe work

zone." In light of the detailed evidence in the summary-judgment record, the proper analysis leads to the conclusion that the precise governmental conduct at issue in this case is discretionary in nature.

With respect to the first type of challenged conduct, the City's policies and practices neither require nor forbid the use of a crash pad but, rather, allow crew leaders to decide, based on the particular circumstances, whether a crash pad is appropriate to protect the surface of a street and to maintain control of a felled tree and, if so, how to construct a crash pad. Teske, the crew leader, decided to use a crash pad on January 4, 2013, after considering the location and angle of the tree, the location of surrounding structures, the weather, the available equipment, and the goal of ensuring the safety of the crew and bystanders.

With respect to the second type of challenged conduct, the City's long-standing policy is to follow a national industry standard (specifically, ANSI Z133), which calls for a circular safe zone whose radius is two times the length of the tree trunk being felled. Teske complied with this standard by ensuring that Fladwood and all other persons were more than 54 feet from the base of the 27-foot tree trunk.

Fladwood cannot defeat the city's assertion of vicarious official immunity because he cannot identify a duty that Teske failed to perform that was "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *See Vassallo by Brown v. Majeski*, 842 N.W.2d 456, 462 (Minn. 2014) (quotation omitted). Thus, the challenged governmental conduct is discretionary in nature, which means that the city is protected by the doctrine of vicarious official immunity.

**B.**

A contrary conclusion does not follow from *Williamson v. Cain*, 310 Minn. 59, 245 N.W.2d 242 (1976) (*per curiam*). The *Williamson* opinion predates the line of cases cited above and, accordingly, does not anticipate the need "to identify the *precise* governmental conduct at issue." *See Olson*, 509 N.W.2d at 371 (emphasis added). In addition, the *Williamson* opinion does not discuss any factors that might have guided the governmental employees' exercise of discretion, likely because no such evidence or argument was offered or because the governmental employees' conduct could not have been justified by any discretionary decisionmaking. *See* 310 Minn. at 60-62, 245 N.W.2d at 243-44. For whatever reason, the *Williamson* opinion does not contain the analysis that is required by the supreme court's more recent opinions. Furthermore, the facts of *Williamson* have no more than a superficial similarity to the facts of this case. The demolition of the house in *Williamson* did not involve the use of a crash pad and did not involve any decision about where bystanders should stand during the demolition process. *See id.* at 60, 245 N.W.2d at 243. In short, *Williamson* does not preclude or curtail the analysis that is prescribed by the supreme court's opinions in *Olson* and subsequent cases.

Fladwood also contends, in part, that official immunity does not apply because the challenged governmental conduct did not require split-second decisionmaking. Fladwood's contention is contrary to the purpose of official immunity, which is "to protect public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties." *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 655 (Minn. 2004) (quotation omitted). This purpose may be

served in cases that do not involve split-second decisionmaking. Indeed, both the supreme court and this court have applied the doctrine of official immunity in cases in which the challenged governmental conduct did not involve split-second decisionmaking. *See, e.g.*, *Sletten*, 675 N.W.2d at 300-08 (maintenance and regulation of compost site that allegedly contaminated groundwater); *Olson*, 509 N.W.2d at 371-72 (formulation of case plan for child in need of protection); *Semler v. Klang*, 743 N.W.2d 273, 277-79 (Minn. App. 2007) (notification of presence of sex offender), *review denied* (Minn. Feb. 19, 2008); *Meier v. City of Columbia Heights*, 686 N.W.2d 858, 863-66 (Minn. App. 2004) (abatement of "garbage house"), *review denied* (Minn. Dec. 14, 2004); *Huttner v. State*, 637 N.W.2d 278, 284-86 (Minn. App. 2001) (monitoring of compliance with treatment plan to control mental illness), *review denied* (Minn. Nov. 13, 2001). I would not alter the analysis prescribed by *Olson* and subsequent opinions on the ground that Teske's conduct did not require split-second decisionmaking.

In sum, I would affirm the well-reasoned decision of the district court.