*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1604**

William A. Statz and Kathryn L. Statz,
as co-trustees for the next of kin of Friedrich Statz, Deceased,
Appellants,

vs.

State of Minnesota,
Respondent,

Anthony Simon, et al.,
Defendants.

**Filed May 23, 2016
Affirmed
Toussaint, Judge***

Waseca County District Court
File No. 81-CV-14-325

Kenneth R. White, Law Office of Kenneth R. White, P.C., Mankato, Minnesota (for appellants)

Lori Swanson, Attorney General, Eric V. Brown, Assistant Attorney General, St. Paul, Minnesota (for respondent)

        Considered and decided by Jesson, Presiding Judge; Reilly, Judge; and Toussaint,

Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**TOUSSAINT**, Judge

In their wrongful-death claims against respondent State of Minnesota arising out of a motor-vehicle collision, appellants allege that the state was negligent in changing the traffic controls where the collision occurred at an intersection without adequate signage and notice of the change. Appellants assert that the district court erred by applying (1) statutory immunity, because the state's traffic engineer's decisions were professional and did not involve balancing political, economic, and social factors to create social policy; and (2) official immunity, because the traffic engineer was following policy or acting in the absence of policy. Because the district court did not err in concluding that the state was entitled to vicarious official immunity and granting the state's summary judgment motion, we affirm.[1]

## FACTS

This case arises out of a fatal vehicle collision that occurred at the intersection of County Road 27 and Old U.S. Highway 14 (Old 14) in Waseca, Minnesota, on November 12, 2012. The collision involved a car driven by Friedrich Statz (Statz) and a semi-truck and trailer driven by Anthony Simon. Simon was driving the semi-truck west on Old 14. As Simon approached the intersection with County Road 27, he noticed Statz stopped at a stop sign on County Road 27. Statz pulled into the intersection in front of Simon's semi-truck. Simon attempted to swerve around Statz's vehicle but was unable to avoid

---

[1] Because we are affirming based on vicarious official immunity, we need not address the statutory immunity issue.

colliding with the driver's side of Statz's car. Simon sustained no injuries, but Statz was killed as a result of the collision.

At the time of the collision, traffic on Old 14 was uncontrolled through the intersection with County Road 27. Traffic on County Road 27 was governed by a stop sign. The intersection was under the control of the state through the Minnesota Department of Transportation (MnDOT).

Prior to 2006, traffic on Old 14 was uncontrolled at the intersection, but County Road 27 was controlled by stop signs. On August 23, 2006, MnDOT installed temporary semaphore traffic signals at the intersection as part of the construction of the U.S. Highway 14 bypass. The intersection operated under this traffic control structure until August 20, 2012, when MnDOT converted the intersection to an all-way stop by setting the semaphore traffic signals to an all-red flash mode and installing stop signs and other advance warning signs in all directions. The advance warning signs warned drivers of the traffic control change. On October 23, 2012, the temporary semaphore traffic signals and advance warning signs were removed, and the intersection remained an all-way stop with the posted stop signs.

On October 29, 2012, the state learned that drivers on Old 14 were not obeying the stop signs. Waseca County added red flashing lights to the stop signs to increase visibility, but drivers continued to disobey the signs. The Waseca County Sheriff sent an e-mail to the state requesting that the stop signs on Old 14 be removed. On November 9, 2012, MnDOT traffic engineer Scott Thompson decided to remove the stop signs from Old 14, restoring the intersection to a two-way stop configuration as it was prior to 2006.

Thompson decided to remove the stop signs on Old 14 without also removing the 24-inch-wide white stop-bars on the road surface. Thompson "knew that the stop-bars could not be immediately and simultaneously removed because of lack of proper equipment, resources, and personnel." Thompson "knew that with all other references to stop conditions removed, a stop-bar loses all of its meaning and becomes just a 24-inch-wide white line across the road surface." According to Thompson, the stop-bars on Old 14 had "retro-reflective glass beads" that would reflect light back only to drivers who directly approached the stop-bars. The beads would prevent drivers on County Road 27 from seeing the Old 14 stop-bars at night because the stop-bars on Old 14 would not have reflected in the direction of County Road 27. Three days after the stop signs on Old 14 were removed, Statz was killed in the collision at the intersection.

On November 26, 2013, appellants William A. Statz and Kathryn L. Statz, as co-trustees for the next of kin of Statz, sued the state, Simon, and Simon's employer. By stipulation, the claims against Simon and his employer were subsequently dismissed. Appellants maintained the suit against the state, alleging that the state was negligent for failing to warn drivers of the November 9, 2012 traffic change.

After completion of discovery, the state filed a "Notice of Motion and Motion to Dismiss and/or for Summary Judgment." In support of the motion, the state filed a memorandum, affidavits, and numerous exhibits. The district court concluded that, because it would have to consider matters outside the pleadings in order to rule on the motion, Minnesota Rule of Civil Procedure 12.02 required the motion to be treated as a motion for summary judgment. The district court ultimately granted summary judgment

4

in favor of the state, concluding that the state was immune from suit on the basis of vicarious official immunity and statutory immunity. This appeal follows.

## D E C I S I O N

Appellants argue that the district court erred by determining that the state is entitled to vicarious official immunity. The applicability of immunity is a legal question, which we review de novo. *Sletten v. Ramsey County*, 675 N.W.2d 291, 299 (Minn. 2004). "Summary judgment is appropriate when a governmental entity establishes that its actions are immune from liability." *In re Alexandria Accident of Feb. 8, 1994*, 561 N.W.2d 543, 546 (Minn. App. 1997), *review denied* (Minn. June 26, 1997). Summary judgment is granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, we review de novo whether a genuine issue of material fact exists and whether the district court erred in applying the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002).

"Common law official immunity generally applies to prevent a public official charged by law with duties which call for the exercise of his judgment or discretion from being held personally liable to an individual for damages." *Schroeder v. St. Louis County*, 708 N.W.2d 497, 505 (Minn. 2006) (quotation omitted). Official immunity serves to protect public officials from the fear of personal liability that might deter independent action and negatively affect the performance of their duties. *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 655 (Minn. 2004). Official

5

immunity applies when a public official is executing a discretionary function rather than a ministerial function. *Schroeder*, 708 N.W.2d at 505. "[T]he mere existence of some degree of judgment or discretion will not necessarily confer common law official immunity; rather, the focus is on the nature of the act at issue." *Id.* (quotation omitted). "Official immunity does not apply: (1) when a ministerial duty is either not performed or is performed negligently, or (2) when a willful or malicious wrong is committed." *Id.* A ministerial duty is one that is "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Id.* at 506 (quotation omitted). A discretionary decision is one involving "more individual professional judgment that necessarily reflects the professional goal and factors of a situation." *Id.* (quotation omitted).

The initial question, then, is whether Thompson's decisions in removing the stop signs and not placing any signs warning of the traffic control change were discretionary decisions or ministerial duties. Minnesota law mandates that the commissioner of transportation "shall adopt a manual and specifications for a uniform system of traffic-control devices." Minn. Stat. § 169.06, subd. 1 (2014). The Minnesota Manual on Uniform Traffic Control Devices (MMUTCD) "contains the basic principles that govern the design and use of traffic control devices." Minn. Dep't of Transp., *Minnesota Manual on Uniform Traffic Control Devices* § 1A.2 (2015) [hereinafter *MMUTCD*].

Section 2B.5 of the MMUTCD directs that "ALL WAY" supplemental plaques "shall" be mounted below each stop sign at an all-way stop. *Id.* § 2B.5. When the intersection was converted to an all-way stop on August 20, 2012, there were no "ALL

6

WAY" supplemental plaques placed below the stop signs. Appellants argue that "drivers using the intersection became accustomed to the four-way stop nature of the intersection and received no notice or warning of the change to a two-way stop configuration that would have occurred had the [all way] signs [previously] been in place as required." The district court determined that this fact was irrelevant. We agree. Because appellants' argument assumes that Statz was unaware of the traffic control change and still assumed that the intersection was an all-way stop, the absence of an "ALL WAY" plaque below the stop sign prior to November 9 could not have factored into the collision. The MMUTCD prohibits the use of "2-WAY" plaques. *Id.* The district court therefore correctly concluded that Thompson did not violate any provisions of section 2B.5 after the stop signs on Old 14 were removed.

Appellants contend that Thompson failed to warn the public about the change in the traffic controls. The MMUTCD provides that "[t]he use of warning signs shall be based on an engineering study or on engineering judgment." *Id.* § 2C.2. It further provides that "[t]he use of warning signs should be kept to a minimum as the unnecessary use of warning signs tends to breed disrespect for all signs." *Id.* Thompson testified at his deposition that he did not place signs warning of the traffic control change at the intersection because "looking at all the factors that were weighing on this intersection, they weren't required. Those factors range from the simple fact that motorists on County Road 27 were adhering to the stop signs. Additionally, based upon the traffic volumes, the guidance from the [MMUTCD], the signs weren't necessary." Thompson also stated in his affidavit that he used his "professional discretion and judgment to determine that

7

no additional warning signage was necessary or preferred." He also "took into consideration the MMUTCD's warning against over-signage because an excess of signage decreases the impact and effectiveness of the warning signs on the roads."

The MMUTCD provides guidance on the use of specific types of warning signs that could have been used after removing the stop signs from Old 14. For example, "The CROSS TRAFFIC DOES NOT STOP . . . plaque may be used in combination with a STOP sign when engineering judgment indicates that conditions are present that are causing or could cause drivers to misinterpret the intersection as an all-way stop." *Id.* § 2C.59. The MMUTCD similarly provides that "NEW TRAFFIC PATTERN AHEAD" or "TRAFFIC CONTROL CHANGE AHEAD" signs "may be used on the approach to an intersection . . . to provide advance warning of a change in traffic patterns, such as revised lane usage, roadway geometry, or signal phasing." *Id.* § 6F.30. The district court properly concluded that Thompson's decision not to post signs warning of the traffic control change was discretionary because the MMUTCD defers to engineering judgment in the placement of warning signs, and because it states that certain warning signs *may* be used and does not mandate their use. Indeed, the MMUTCD states that when the verb "may" is used in the manual, the provision is "a statement of practice that is a permissive condition that carries no requirement or recommendation." *Id.* § 1A.13. Because the provisions of the MMUTCD regarding the use of warning signs defer to the judgment of the engineer and do not mandate their use, these decisions involve "more individual professional judgment that necessarily reflects the professional goal and factors of a

8

situation," thereby making them discretionary decisions. *See Schroeder*, 708 N.W.2d at 506 (quotation omitted).

Appellants argue that the state should have removed the stop-bars before the stop signs on Old 14 were removed. The MMUTCD provides that markings no longer applicable for roadway conditions shall be removed "as soon as practical." *MMUTCD* § 3A.2. The district court concluded that "as soon as practical" means "as soon as practical, based on the application of engineering judgment." The district court came to this conclusion because the MMUTCD states that the manual "should not be considered a substitute for engineering judgment." *Id.* § 1A.9. Thompson determined that it was not practical to remove the stop-bars simultaneously with the stop signs because of the lack of equipment, resources, and personnel. He further used his judgment to conclude that the stop-bars would be meaningless and that safety required that the stop signs be removed, even if the stop-bars had to remain. Because this decision also required Thompson's judgment, and because the MMUTCD did not require him to remove the stop-bars simultaneously with the stop signs, only to remove them as soon as practical, this was also a discretionary decision.

In sum, all of Thompson's decisions regarding removal of the stop signs from Old 14 were discretionary in nature because they involved "more individual professional judgment that necessarily reflects the professional goal and factors of a situation." *See Schroeder*, 708 N.W.2d at 506 (quotation omitted). The MMUTCD directed Thompson to use his engineering judgment and did not command him to perform any ministerial duties regarding the removal of the stop signs, removal of the stop bars, or the placement

9

of warning signs. The MMUTCD only provided him with permissive guidance regarding warning signs that he could have chosen to implement. Because Thompson's decisions regarding the removal of the stop signs from Old 14 were all discretionary in nature and because Thompson did not violate any ministerial duty, the district court did not err by determining that his actions were entitled to official immunity.

Having concluded that Thompson is entitled to official immunity because his decisions were discretionary, the final issue to decide is whether the state should be entitled to vicarious official immunity. "In general, when a public official is found to be immune from suit on a particular issue, his government employer will enjoy vicarious official immunity from a suit arising from the employee's conduct." *Id.* at 508. A government employer may be entitled to vicarious official immunity even when the employee whose conduct is in question is not named in the lawsuit. *Anderson*, 678 N.W.2d at 664. But the state is not automatically entitled to vicarious official immunity simply because the employee is deemed to have official immunity. *Sletten*, 675 N.W.2d at 300. Vicarious official immunity is applied "when failure to grant it would focus stifling attention on an official's performance to the serious detriment of that performance." *Anderson*, 678 N.W.2d at 664 (quotations omitted). "This standard grants vicarious official immunity in situations where officials' performance would be hindered as a result of the officials second-guessing themselves when making decisions, in anticipation that their government employer would also sustain liability as a result of their actions." *Id.* The issue of whether to extend vicarious official immunity to the state is ultimately a policy question. *Schroeder*, 708 N.W.2d at 508.

The district court determined that, if vicarious official immunity were not extended to the state here, "it would likely result in an environment where traffic engineers would be prevented from relying on their engineering judgment for fear their employer would be liable should the wrong decision be made." The district court further concluded that not extending vicarious official immunity to the state "would also likely lead to increased oversight by the governmental employer that could prevent traffic engineers from doing their job effectively." We agree with the district court's reasoning. Failure to grant the state vicarious official immunity here would focus stifling attention on traffic engineers' performance to the detriment of that performance if traffic engineers would have to concern themselves with the possibility that their employer might be held liable when they are exercising their engineering judgment, which the MMUTCD explicitly directs them to do.

This case is similar to *Ireland v. Crow's Nest Yachts, Inc.*, 552 N.W.2d 269 (Minn. App. 1996), *review denied* (Minn. Sept. 20, 1996). The appellants in *Ireland* filed a lawsuit alleging that Carver County was negligent in the installation of warning signs and rumble strips at an intersection where a man died in an accident. 552 N.W.2d at 271. Carver County moved for summary judgment on the grounds that it was entitled to vicarious official immunity and statutory immunity. *Id.* at 272. The district court denied the motion, and Carver County appealed. *Id.* This court held that the placement of a warning sign was a discretionary act of the traffic engineer. *Id.* at 273. The appellants in *Ireland* even conceded that the MMUTCD provisions using the verb "may" were discretionary in nature. *Id.* at 272-73. The issue in *Ireland* was whether the state should

11

be entitled to vicarious official immunity because the public official was entitled to official immunity. *Id.* at 273. The *Ireland* court granted vicarious official immunity because to impose liability on the governmental employer would require the court to review the immunized employee's discretionary decision. *Id.* The court reasoned that to do so "would defeat the purpose of official immunity, which is to shield the exercise of public officers' independent judgments from civil adjudication." *Id.* That same reasoning also applies here.

The district court did not err by determining that the state is entitled to vicarious official immunity. Summary judgment was therefore appropriate.

**Affirmed.**